NORTHWESTERN FIRE & MARINE INSURANCE COMPANY v. CONNECTICUT FIRE INSURANCE COMPANY.[1]

September 25, 1908.

Nos. 15,705—(222).

**Alteration of Contract.**
The party who asserts an alteration in an original written contract by the course of business between the parties thereto must bear the burden of showing that the minds of the parties met upon a modification definite in terms.

[1] Reported in 117 N. W. 825.

**Same—Burden of Proof.**

That burden is not borne by proof of ambiguous transactions from which one party might infer that the original contract was still in force and the other that it had been changed. In such a case no mutual agreement would result.

**Presumption on Appeal.**

The presumption in the appellate court that the trial court had properly determined questions of fact applies, not only to its conclusions from disputed facts, but also to its inferences reasonably to be drawn from undisputed facts.

**Insurance Premium—Evidence.**

The retention of the premium by the insurance company is not conclusive of its right to assert defenses in an action to enforce the policy, but may be evidence of an intention not to claim that the policy is invalid. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 99, followed and applied.

**Evidence of Custom.**

A custom in force among insurance companies is not admissible in evidence to contradict the specific provisions of a written contract.

**Contract of Insurance—Evidence.**

Here plaintiff, a fire insurance company, agreed in writing with defendant, another insurance company, to "cede" to the defendant its first surplus for reinsurance, to become binding at twelve o'clock noon of the day on which the report should be mailed defendant, as evidenced by the postmark. Subsequently the parties at intervals used a "binder." On a certain day plaintiff issued a policy of $10,000, "ceded" a part to defendant, made entry upon its books, and issued a "binder." This it did not mail until the following day and while the property insured was being destroyed by fire. Defendant rejected the risk, but subsequently retained the premium sent by plaintiff as part of a larger check in settlement of current accounts. It is *held*:

1. That the inference from the evidence as to the modification of the contract was not so clear and certain as to require a reversal of the finding of the trial court that no modification of the original contract had been made.

2. That the retention of the premium after express rejection of the policy did not estop the defendant from asserting that it was not in force.

3. That evidence of the custom among insurance companies to obligate an insurance company from the date of the issuance of a binder was in admissible, because it contradicted the express terms of the written contract.

Action in the district court for Hennepin county to recover $2,424.-06, alleged to be the amount of defendant's proportionate share in certain reinsurance upon a fire insurance policy. The case was tried on an agreed statement of facts before John Day Smith, J., who found in favor of defendant. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed.

*G. W. Buffington,* for appellant.

*M. H. Boutelle* and *N. H. Chase,* for respondent.

JAGGARD, J.

Plaintiff and appellant insurance company paid somewhat less than $10,000 as its proportionate share of the insurance on a risk covered by a $10,000 policy on which it claimed defendant and respondent insurance company had reinsured it to the extent of $2,500. By this action plaintiff sought to recover defendant's proportionate share, viz., $2,424.06. For present purposes The Northwestern Fire & Marine Insurance Company, a North Dakota corporation, and a Minnesota corporation named Northwestern Fire & Marine Insurance Company, may properly, and for convenience will be, referred to as one and the same.

In 1905, the Northwestern Company entered into an agreement with the Connecticut Fire Insurance Company whereby it was agreed, among other things, as follows: Plaintiff should, in the inept language of the contract, "cede" to defendant its first surplus (that is, its excess amounts of insurance issued by it, and not retained by it), provided that the amounts of such reinsurance so ceded to defendant should not exceed $2,500 on any one risk, and that plaintiff should retain at its own hazard $1,000 on risks on which reinsurance should be ceded to the defendant. Daily reports giving the copy and number of the policy issued by the plaintiff on such reinsurance were to be mailed by plaintiff to defendant on the day on which such reinsurance should be effected. The reinsurance was to become binding on defendant at twelve o'clock noon of the day on which such report should be mailed, as evidenced by the postmark of the post office at Minneapolis, Minnesota. Subsequently in a number of instances, as will hereinafter be more fully stated, plaintiff used a so-called "bind-

er" running from the plaintiff to the defendant substantially in the following form:

"We hold you to cover us as reinsurers to the amount of $———— on our policy No. ———— issued to [name of the insured] covering [property insured] located [ * * *], daily report of which will follow."

On January 15, 1907, plaintiff delivered a policy of insurance for not more than $10,000 to cover insurance on a stock of goods at Fargo, North Dakota, and simultaneously made entry in an appropriate book to that effect, and to the further effect that it had ceded to defendant $2,500 of its surplus on such policy. Plaintiff offered other amounts to other insurance companies, and retained insurance at its own risk to the extent of $2,500. On this day it executed a "binder" on this risk to defendant, but retained it until the following day to enable it to insert therein the number of the policy so issued by it when advised by the agent who wrote the insurance. On that day (January 16) the binder was mailed from Minneapolis, and was received by defendant at its office in Chicago on the seventeenth. Later on the sixteenth the plaintiff mailed defendant the daily report, which was received by defendant on the eighteenth. On the sixteenth the property covered by the policy was partially destroyed by a fire originating about eight o'clock on the morning and continuing until about five o'clock in the evening. On January 18 the defendant acknowledged the receipt of the binder as of the seventeenth and stated there was evidently no liability on the binder, and that they would, moreover, have been unable to accept the risk, because they were full and had reinsured part of their own excess. Thereafter on the nineteenth the plaintiff notified the defendant of the loss, and furnished due proof of loss, and paid the premium, which defendant retained. The court found both the facts and law for the defendant. This appeal was taken from the order denying the plaintiff's motion for a new trial.

It is clear that under the original contract of reinsurance plaintiff cannot prevail. At the time at which, under that agreement, the defendant's liability commenced, to wit, twelve o'clock noon of the sixteenth, the fire was in progress. Plaintiff, however, insists that subsequent to the assignment and delivery of said reinsurance agree-

ment and said open policy to plaintiff herein, and prior to January 15, 1907, it was mutually understood between defendant and plaintiff that "said reinsurance agreement and open policy should be, and the same were then, so modified that plaintiff should thereafter bind defendant on such part of plaintiff's risks as it might cede to defendant by entering upon the books of record of the plaintiff a memorandum of the reinsurance so effected thereunder, at which time defendant's liability as a reinsurer of plaintiff should begin, and by plaintiff thereafter notifying defendant of such reinsurance on a form furnished plaintiff by defendant, called a binder, which binder, when filled out and signed by plaintiff, should show, among other things, the number of said binder, the amount for which defendant was held as a reinsurer of plaintiff, the number of the policy of insurance issued by plaintiff, the name of the person or corporation insured by plaintiff, and the property insured and where located, and that a daily report thereof from plaintiff to defendant would follow; that said reinsurance agreement and said open policy, thus modified, were in full force and effect on said 15th day of January, 1907."

The essential question in this appeal is whether the trial court properly refused plaintiff's request to so find the fact and was justified in its finding that the original contract was not in fact altered. That court, upon the hearing de novo, was governed, inter alia, by the authority of these obvious principles: The usual burden of proof rested on the plaintiff to show that the minds of both parties met upon a modification of the agreement, definite in its terms. The plaintiff would not bear that burden by showing an ambiguous course of dealing, from which one party might reasonably infer that the original contract was still in force and the other that it had been changed. In such a case no mutual contract would result. This court, a court for the correction of errors, is here called upon to apply these rules of law to the facts proven, with due reference to the usual presumption in favor of the trial court, not only in determining the disputed questions of fact, but in drawing reasonable inferences from undisputed facts.

From the facts stipulated it appears, in effect, that in varying numbers of instances the date of commencement of the risk antedated the binder, the date of the binder antedated the commencement of the risk, and the date of the binder and date of the commencement

of the risk were identical; "that subsequent to entering into said reinsurance agreement * * * plaintiff had offered to * * * defendant 685 separate and distinct reinsurance risks; * * * that in 265 of said reinsurance risks, in connection with which there were no binders, the date of commencement of risk, shown by the reinsurance daily reports, antedated the date of receipt of said reports by defendant at its Chicago office by more than two days; that in 183 of such reinsurance risks, in connection with which there were no binders, the daily reports were received also by defendant, at its Chicago office, within two days or less of the date of commencement of risk shown on said daily reports." The number of cases in which no binder was used exceeded the number in which the binder was used and followed by the daily report. The use of the binder at intervals, and the inference from its use, was not certain or univocal. This is the more clearly shown by the shifting of plaintiff's contention as to the exact date of obligation by binder—whether the entry on the books, or the date, of the issuance of the binder.

However these facts, and others on which plaintiff relies, may have appeared to it, the transaction did not necessarily show or suggest to defendant a modification of the contract. Defendant had no actual knowledge of plaintiff's habit and method of bookkeeping. No facts appeared whereby constructive notice must be inevitably imputed to it. Defendant might reasonably have inferred that the notice of the binder was to supply it with a less formal, and in some cases more speedy, form of notification than that evidenced by the reinsurance daily report, in order that plaintiff, in certain cases, might be thus enabled earlier to notify defendant of the cession of the reinsurance risk than it would have been able to if it had been compelled to wait for the additional particulars necessary for the complete daily reinsurance report. The purpose of the binder, on the other hand, plaintiff contends, was to create temporary or interim insurance, and the facts tend in a measure to sustain that view. None the less plaintiff's own pleadings and argument do not make it clear whether it insists that defendant was bound when the entries were made, or when the binder was executed, or when it was dated, or when it was "issued." It is significant, however, that insurance which had been offered to defendant had been rejected by defendant, the entry or certificate being

canceled "flat"; that is to say, no premium being allowed the defendant on the same. Presumptively plaintiff collected the retained premium. There would be some reason for holding it responsible for the risk during the period involved. Upon the whole it seems quite clear that no inference of the modification of the original contract from proof of the practice of the company follows as a matter of law, and that the inference drawn by the trial court from the evidence, within the principles to which reference has been made, should be sustained. Whether or not a conclusion for the plaintiff would have been sustained is not before us. The authorities on the subject are not conclusive. In Putnam v. Home, 123 Mass. 324, 25 Am. 93, a similar question with reference to a "binding-book" corresponding more or less completely to the "binder" here was submitted to the jury. Lipman v. Niagara, 121 N. Y. 454, 24 N. E. 699, 8 L. R. A. 719, and Smith v. Prussian, 68 N. J. L. 674, 54 Atl. 458, are consistent with the conclusion here reached.

The retention of the premium on the reinsurance without offering to return the same does not, as a matter of law, operate to waive defendant's right to deny its liability, nor, in connection with proof of use of "binders," show that defendant consented to protect plaintiff temporarily. In February, 1907, plaintiff sent defendant a monthly statement or balance sheet showing in detail the reinsurance policies between the parties for the previous month, including the transaction here in question. The statement was accompanied by a check for the sum of $200, which represented the balance due from plaintiff to defendant on account of business transacted during the three prior months. Defendant retained the premium in question and has never offered to return it. The effect of retention of premium was elaborately considered in Parsons, Rich & Co. v. Lane, 97 Minn. 98, 99, 106 N. W. 485. It was there said, inter alia: "It is claimed that the defendant waived the right to avail itself of its defense because of its failure to return the premium within a reasonable time after it learned that the policy was not in force. We think this contention rests upon a misconception of the duty of the insurer and of the application of the doctrine of waiver and estoppel. * * * The most that can properly be claimed is that the retention of the premium is evidence of an intention not to claim that the policy is invalid."

In the case at bar on January 18, the defendant wrote the plaintiff, refusing to be bound by the risk. Defendant's consistent and clearly expressed position has been that there was no policy contract under which any breach could occur. It never requested plaintiff to pay any premium to it, nor refused to return to plaintiff the premium paid on demand. The trial court was justified in holding that the act of plaintiff in sending the defendant the premium after defendant had refused to recognize the contract was not sufficient, in itself or in connection with the evidence, to create an obligation, or to have a retroactive effect by creating a contract making the defendant responsible for the loss.

The court excluded the offer of the defendant to show the custom or usage among insurance companies of such character that the effect of the use of such binders is to obligate the insurer from the issuance and date of such binders until received by the insurer, or, in case of an open policy issued by a reinsurer to the reinsured, until other detailed data, in the form of a daily report or otherwise, should reach the reinsurer. As has been pointed out, the original contract clearly states the time when the obligation of the reinsurer takes effect. That time is inconsistent with this custom. The custom directly contradicted the specific provision of the contract determining the liability of the defendant. It was therefore inadmissible. Grace v. American Cent. Ins. Co., 109 U. S. 278, 283, 27 L. Ed. 932; Hearne v. Marine Ins. Co., 20 Wall. 488, 492, 22 L. Ed. 395; Simmons v. Law, 3 Keyes (N. Y.) 217, 219; Phenix v. Munger, 49 Kan. 178, 30 Pac. 120, 33 Am. St. 360; Healey v. Mannheimer, 74 Minn. 240, 76 N. W. 1126.

Affirmed.