## WORCESTER POST CO. v. W. H. PARSONS & CO.

## HARRINGTON v. SAME.

(District Court, D. Massachusetts. May 1, 1919.)

Nos. 779, 780.

1. SALES ⬅54—CONSTRUCTION OF CONTRACT.

In the construction of written contract of sale, deliveries under which were to be made during a series of months, the subject-matter of the contract, its purpose, and the situation of the parties are material, to determine their intention, the meaning of the words used, and in interpreting their conduct during the time of deliveries.

2. SALES ⬅71(4)—DELIVERY IN INSTALLMENTS—EFFECT OF ORDERS FOR LESS THAN INSTALLMENT DUE.

A contract between a newspaper publisher and a paper manufacturer for the purchase and sale of 900 tons of paper, to be delivered within 20 months, approximately 45 tons per month, construed to be in effect one to supply the purchaser's monthly needs, within the limit of 900 tons, and his action in ordering usually less than 45 tons monthly, which was furnished without objection, *held* a waiver as to the remainder, and not to entitle him to demand delivery of the remainder of the 900 tons during the last month.

3. CONTRACTS ⬅247—MODIFICATION—INFERENCE FROM CONDUCT OF PARTIES.

Modifications of a written contract ought not to be inferred from conduct of doubtful significance.

At Law. Actions by the Worcester Post Company and by John H. Harrington against W. H. Parsons & Co. Judgments for defendant.

Dunbar, Nutter & McClennan, of Boston, Mass., for plaintiff Worcester Post Co.

Edward Fisher, of Lowell, Mass., for plaintiff Harrington.

Ropes, Gray, Boyden & Perkins and Albert A. Schaefer, all of Boston, Mass., and Shattuck, Glenn, Huse & Ganter and Garrard Glenn, all of New York City, for defendant.

MORTON, District Judge. These are two actions at law, by separate plaintiffs against the same defendant, to recover damages in each case for failure to deliver paper which the plaintiffs claim the defendant sold to them. The basic facts were similar in the two cases, and by agreement—trial by jury having been waived—they were heard together by the court; certain facts being stipulated, and oral and written evidence being introduced.

The material facts are as follows:

The contracts of sale were in writing on printed forms, and were alike, except in details not significant in the present controversy. Both were dated November 11, 1914. The first clause, which is the important one, reads as follows:

"First. The manufacturer hereby agrees to sell and furnish to the purchaser, and the purchaser hereby agrees to purchase and take from the manufacturer, for use in the publication of the Worcester Post, a newspaper published in the city of Worcester, Mass., 900 tons of newspaper to be taken

at approximately 45 tons per month; but the purchaser shall be required to take not less than ———— tons and the manufacturer agrees to furnish not more than ———— tons in any one month, during the period from December 1, 1914, to August 1, 1916, at the price and upon the terms hereinafter particularly stated. And this contract shall not be assignable."

Other provisions of the contract specify certain details as to the sort of paper, obligate the purchaser to pay, provide against strikes, etc., and give the right of termination for failure to pay. No questions arise on any of these points.

The last clause reads:

"This agreement shall commence on the 1st day of December, 1914, and shall terminate on the 1st day of August, 1916."

The Lowell Sun contract was the same mutatis mutandis.

After the contracts took effect, each plaintiff sent, from month to month, delivery orders to the defendant for paper. These orders specified the sizes and details of what was wanted; and they were duly filled by the defendant. During the first 2 months of its contract the Post took only 46 tons in all, in but 3 months of the 20 covered by the contract did it take as much as 45 tons, and it never took more than 48.5 tons in a month. The deliveries called for under the Sun contract were very irregular, ranging from 19 tons to 63. No explanations were offered by the buyers for their failure to take the full monthly amounts, and no suggestion was made by the seller that they were in default for not doing so. There was no reference by either party to such nondelivery until the contracts were about to expire, when the buyers made the demand hereafter referred to.

When the last month of the contracts was reached, the average monthly amount which had been called for by the Worcester Post was much less than 45 tons, and there remained a difference between what had been ordered and delivered, and the 900 tons specified in the contract, amounting to a little over 200 tons. The Post thereupon demanded delivery of this entire amount, either all at once, or in such installments running past the termination of the contract time as might be convenient to the defendants. The defendant offered to deliver the monthly amount for the last month, which was done, and refused to make any deliveries beyond that. A like situation arose on the Lowell Sun contract, and was similarly dealt with by the parties. The undelivered balance on the Post contract is about 162 tons, and on the Sun contract about 154 tons. Thereupon the present actions were brought.

The question is whether the defendant was obligated to deliver on each contract, either during the month of July or within a reasonable time after July 31st, the balances above referred to.

The plaintiffs contend that the defendant's failure to object to deficiencies in the monthly delivery orders was a waiver of the delivery terms of the contract, as to the unordered amounts; in other words, that from the plaintiffs' failure to order the full contract amount in any month, and the defendant's silence in relation thereto, there is to be found a new understanding between the parties, whereby the defendant was to deliver the uncalled-for amounts at a later date. The

defendant contends that the silence of the parties indicates that both abandoned the contracts as to such amounts.

[1, 2] In interpreting the conduct of the parties, all surrounding circumstances which throw light on the matter may be considered, including the evidence as to the preliminary negotiations which was introduced by the plaintiffs against the objection of the defendant. "The subject-matter of the contract, its purpose, and the situation of the parties are material to determine their intention and the meaning of words used." ·Purnell, J., Hull Coal & Coke Co. v. Empire Coal & Coke Co., 113 Fed. 256, at page 260, 51 C. C. A. 213, 217 (C. C. A. 4th Cir.). While the contracts are not by their terms of the kind in which the seller undertakes to supply the buyer's needs as to. a certain article, that was what both parties understood was in effect being arranged for. There are indications of this in the contracts themselves (e. g., "the purchaser hereby agrees to purchase and take * * * for use· in the publication of the Worcester Post [or Lowell Sun]," etc.; monthly deliveries of a stipulated amount are provided for; the terms of the contracts are unusually long; " * * * and this contract· shall not be assignable"), and the discussions ,which preceded the contracts clearly show that both parties so understood them. The amounts stated, viz. 900 tons, were not the foundation of the agreements; they were reached, as all agree, by taking the buyers' estimates of the maximum amounts which they would probably need in any month, and multiplying by the number of months which, it was finally agreed, the contracts should run. They were outside figures not expected to be actually reached. Mr. Harrington testified that he was to "have the privilege of ordering all the paper that he contracted for" if he saw fit to do so; but he also testified that, when he was asked by the defendant's representative (during the negotiations) what the situation would be if he (Harrington) did not see fit to order it all, Harrington replied, "We may adjust it in making a new contract." His attitude plainly was that he was not bound to take more than he saw fit to order. The same is true of the other contract. It is significant that under previous contracts, similar in character, between the plaintiffs and the predecessor of the defendant in the business, orders and deliveries had been for actual needs, without objection on either side, even when the total called for substantially exceeded the contract amount.

The supply aspect of the contracts is important, because, if the parties had in mind, as I think they did, that the real purpose was to provide from month to month such paper as the two newspapers required, a definite waiver on abandonment of unordered monthly amounts would be more easily inferred than if the purchasers were known to be buying for resale, or for some broader purpose. In the first month of its contract (December, 1914) only 23 tons were ordered by the Post and were delivered. For a year and a half thereafter neither party made any reference to the balance of the 45 tons which should have been ordered and delivered in that month. Then the plaintiff called for the 22 tons, and now claims damages for the refusal to deliver them, upon the ground that the defendant's failure

to object to the deficiency in the December order and its silence in relation to it show that it agreed to deliver the unordered portion whenever the plaintiff might call for it within the contract period.

The defendant did not in fact so understand the matter, nor did it act in such a way as to justify a belief that it so understood it. If the defendant had supposed that it was obligated to deliver 22 tons of paper on account of December, 1914, and the plaintiffs had supposed that they were entitled to that amount whenever they might reasonably request it, the matter would not have gone unmentioned for 18 months. No distinction is suggested between the different months. If the unordered amounts were abandoned by both parties as to the earlier months under the contracts, they were, with the limitation hereafter stated, abandoned as to the later ones.

In the situation existing at the time of the plaintiffs' final demand, it is obvious that the provisions of the contracts relating to the total amount purchased, and to the times of delivery, could not both be carried out. The delivery of the entire 900 tons could not be required without disregarding the agreed rate; while, if the delivery provisions were observed, less than 900 tons would be furnished within the period fixed by the contracts. No such difficulty was inherent under them. It arose solely because of the plaintiffs' repeated failures to order and take the stated monthly amount. It is clear that it devolved upon the plaintiffs to take the initiative in giving delivery orders, by which various necessary details as to size, etc., were to be specified, and that without such orders the defendant could not tender deliveries. The responsibility for the situation referred to was therefore entirely upon the plaintiffs.

The failure of the plaintiffs to order from month to month the stated amount constituted breaches of contract by them. Manhattan Oil Co. v. Richardson Lubricating Co., 113 Fed. 923, 51 C. C. A. 553 (C. C. A. 2d Cir.). Of course, the plaintiffs cannot by their own defaults increase the burden on the defendant, nor vary the contracts as to dates or amounts of deliveries without the defendant's assent. Johnson et al. v. Allen et al., 78 Ala. 387, 56 Am. Rep. 34. It devolves upon the plaintiffs to establish that such assent was given, and upon all the evidence I am of opinion that the defendant's silence does not show an agreement on its part to a modification of the original contracts in respect to deliveries.

[3] Many decisions have been cited by the parties, but from the nature of the case, the real question being one of fact, they do not afford much assistance in arriving at the correct result. It should perhaps be observed that, in the cases relied on by the plaintiffs, there was, instead of silence, negotiation between the contracting parties, which was found to have resulted in a new agreement as to the time of delivery. Modifications of a written contract ought not to be inferred from conduct of doubtful significance. Northwestern Fire & Marine Ins. Co. v. Connecticut Fire Ins. Co., 105 Minn. 483, 117 N. W. 825. The defendant's silence as to the unordered monthly amounts is at least as consistent with the view that it regarded them as not needed by the plaintiffs, and abandoned, as with the view that it waived the plaintiffs' breaches in not ordering and agreed to fur-

nish the unordered amounts at a later date, in disregard of the limitations on the maximum amount of deliveries in any one month and of the time which the contracts were to run, which were inserted for its protection.

Upon all the evidence I find that the amounts not ordered by the plaintiffs in any given month were treated by both parties as waived and abandoned. The waiver did not become complete until the lapse of a reasonable time after the month in question. In other words, the contract specified monthly deliveries of "approximately 45 tons," which gave the plaintiffs the right to drop slightly below that amount in one month and go slightly above it in any succeeding month within a reasonable period. But the plaintiffs made no claim and gave no orders for a final delivery on that basis, and their claims here are not rested on an alleged breach of that character.

Judgment for the defendant.