## Runyon, Sr. v. Pond Creek Coal Company.

(Decided February 16, 1923.)

### Appeal from Pike Circuit Court.

Appeal and Error—Finding of Chancellor—Boundaries.—Under the facts, as set out in the opinion, it is held that the court correctly located the disputed lines involved in this controversy, and under the rule governing this court in reviewing findings of fact by the chancellor the judgment will not be disturbed.

WILLIS STATON and W. G. W. RIDDLE for appellant.

AUXIER, HARMON & FRANCIS for appellee.

Opinion of the Court by Judge Thomas—Affirming.

Appellant, Moses Runyon, Sr., through this equity action filed by him in the court below against appellee and others as defendants, seeks to establish his title to the minerals under about seventeen acres of land lying on Pond creek in Pike county. His right to the relief was contested by defendant, Pond Creek Coal Company, all other defendants from one cause or another having dropped out of the case, and upon final submission the court dismissed the petition and rendered judgment quieting the title of defendant coal company to the minerals under the small tract in controversy. It is a part of a large tract of land formerly owned by plaintiff's father, Adrion Runyon, Sr., lying on both sides of Pond creek, and he devised it to his children in a will which he executed in 1857, and which was probated shortly after his death in 1859.

The only two clauses of the will having any bearing upon the question at issue are numbers 9 and 10, the first of which (9) says: "I give to my son, Adrion Runyon, the land from the upper end of the long field at the bank of the creek running with the fence at the upper end of said field to the top of the ridge, thence running with the ridge to the head of the Meeting House branch to a large sugar tree corner, then down the Meeting House branch on both sides of the main creek a small distance below the orchard to two sugar trees corner of the Madison survey, then from the sugar tree square up the hill to the back line, then from the two sugar trees up the creek on the same side with the meanders of the creek to the upper end of the long field so as to include all the land in that boundary and orchard and buildings," while the second one (10) is in this language: "I give to my son, Moses Runyon, all the land from the upper end of the long field on the same side of the creek up to Sally McCoy's line at the lower end of the field her house stands in, running with her lines to the top of the ridge down the same side to the upper end of the long field, thence beginning at the mouth of Pegs branch on the opposite side and crossing of the creek, then running up Pegs branch with the fence on the lower side of said branch, then running up the point with Wm. Anderson's line to the top of the ridge, then running down the ridge so as to come down the ridge so as to come down the point at the upper side of the meadow hollow at the mouth of the drain."

Appellant is the devisee mentioned in the last quoted clause of the will and he, in 1873, sold his devised interest to his brother, Thomas W. Runyon, and about the same time purchased the interest of his brother, Adrion Runyon, Jr. The devises to Adrion Runyon and to Moses Runyon adjoined, the latter lying principally, if not entirely, west of the former, according to the map filed with the record, and Moses Runyon, the appellant, under the will of his father, took the land on both sides of Pond creek, the larger portion of it being on the west side of the creek. It is the location of the line between his portion lying east of the creek and the portion devised to his brother, Adrion, which presents the question for solution in this case.

Fork ridge separates the waters of Pond creek from those of Meeting House branch and it is the land enclosed by the top of that ridge and the straight line running from the upper end of the long field, mentioned in the will, to a point on the top of the ridge and running along the side of the hill that is involved in this controversy. Mineral deeds were made by Moses and Thomas W. Runyon to plaintiff's remote vendor in 1886, and in 1896 plaintiff sold the surface of his land and moved away to West Virginia, and since that time he has listed for taxation no land or minerals formerly owned by his father, nor has he paid any taxes thereon. On the contrary, the property has been listed and the taxes paid by those who claimed to own the property at the time. Much is said in the record, as well as brief of counsel, about a change having been made in Pond creek somewhere near the upper end of the long field, but we must acknowledge our inability to grasp the materiality or significance of that fact, if it be one. The deed made by Adrion Runyon to plaintiff in 1873 describes the land in practically the same language as that of clause 9 of the will. The beginning corner is, as will be seen, at "the upper end of the long field at the bank of the creek, running with the fence at the upper end of said field to the top of the ridge, thence running the ridge to the head of Meeting House branch," etc. That line is the one separating the land bequeathed to Adrion Runyon and that bequeathed to plaintiff, Moses Runyon, and the same line is thus described in the bequest to Moses Runyon in clause 10 of the will, "All the land from the upper end of the long field on the same side of the creek to Sally McCoy's line

. . . running with her lines to the top of the ridge *down the same side to the upper end of the long field.*" The italicised line is the one in controversy, it being contended by plaintiff that when he ran with Sally McCoy's line "to the top of the ridge," the italicised line ran straight from there down the side of the ridge to the end of the long field, leaving the land between that line and the top of the ridge as a part of Adrion Runyon's tract and which plaintiff contends he acquired through his deed from his brother in 1873, and that he still owns it.

Aside from the language of the two clauses of the will hereinbefore inserted, by far the preponderance of the evidence goes to establish the fact that the interested parties, as well as neighbors who were familiar with the lines, always regarded and treated the top of Fork ridge as the dividing line between the lands of Adrion Runyon and plaintiff which they each obtained under their father's will. In addtiion, as we have seen, plaintiff himself, by his conduct in moving away in 1896 and making no claim to any character of interest in the land in controversy for more than fifteen years construed the will as maknig the top of the ridge the dividing line between his devised portion of his father's land and that devised to his brother, Adrion, which he afterwards acquired and that he had no interest in any of it. In the meantime a railroad was built along Pond creek and considerable coal developments were made, and the price of minerals greatly advanced. We can not read this record without being impressed with the idea that it was because of those facts that the afterthought occurred to plaintiff to assert his present claim which we are convinced is wholly unfounded. The insertion of the map in this opinion would render our conclusion much more convincing to the reader, but it could serve no practical purpose and not to do so would save considerable expense in publishing the opinion.

The main contention of appellant's counsel is that the language in the tenth clause of the will "down the same side to the upper end of the long field," means a straight line down the side of the ridge, and he refers to authorities holding that in running from one point to another without any qualifying or otherwise guiding language means a straight line, which we do not dispute, but the trouble with the position of counsel is that it is perfectly patent that the testator in using the language "down the same side" meant the same side of Pond

creek, which is its east side, since he was then describing the land being devised to Moses Runyon on that side of the creek, and who, as we have seen, obtained under his father's will a much larger tract on the other side of the creek. We think this construction is too plain for argument, and as we have seen it is the one that the actions and conduct of the parties seem to have adopted.

The judgment, which conforms to the views herein expressed, is therefore affirmed.