## IN RE ESTATE OF DANIEL KELLY.[1]

April 26, 1929.

No. 27,241.

[1]Reported in 225 N. W. 156.

312

W. H. & H. W. Gillitt, for appellant.
Kyle & Kyle and J. M. Millett, for respondents.

OLSEN, C.

Appeal by John Kelly from an order of the district court denying his motion for a new trial.

Daniel Kelly died in 1884, a resident of Dakota county, in this state. His property consisted of a farm of 160 acres in that county and personal property of the value of about $1,300. He left him surviving his widow, Bridget Kelly, and eight children, ranging in age from about 15 years to 11 months. A son named John Kelly was then about 12 years old, and a son named Frank was then about five years old. Daniel Kelly left a will disposing of his property. The will was duly admitted to probate July 30, 1884. The widow, Bridget Kelly, assented in writing to the disposition of the property as made and to the will. She was named therein as executrix and appointed as such by the probate court. She qualified and acted as executrix. Her final account was not presented until 1926, and final decree of distribution was not entered until August 10, 1927. The probate court, by its final decree, construed the will as granting to, and vesting title to the 160-acre farm in, the two sons John and Frank, giving an undivided one-half thereof to each of them as of the time each reached the age of 27 years. It is conceded that they each remained on the farm with their mother until after arriving at that age. Some years later each of them married and left the farm. A younger son, James, and two of the daughters, have continued to live on the farm with their mother ever since the death of the father. The widow has not remarried. From the final decree of the probate court, the widow, Bridget Kelly, the son

James, the daughters Elizabeth, Catherine and Deborah, and two grandchildren, the children of a deceased daughter, appealed to the district court. That court construed the will as granting to and vesting title in fee to the 160-acre farm in the widow, Bridget Kelly.

The will was apparently drawn by one not skilled in the drawing of wills or legal documents. It is written with pen and ink on a sheet of letter paper. The lines, words and arrangement thereof, omitting the brief heading, are as follows:

"Last Will and testament of
Daniel Kelly
I do bequeath the care of my
farm to my wife If she Remain
single untill my son John
Kelly is 27 years of age then he
to get 80 acrs also my son

yrs

Frank 80 acres when he is 27
of age if he lives with his
Mother  I allso desire my wife
Bridget Kelly to pay out
of the proceeds of said farm

one

to each and every of the
following children the
sum of two hundred dollars
at her own discretion
to wit

"Margret Kelly
"Mary Kelly
"Elizabeth  Kelly
"Catherine Kelly
"Debora Kelly
"James Kelly
"I also bequeath to my wife
Bridget after my depts all

> are paid all that remains
> of my personal property
>     also 300 dollars I have in Bank
> My farm Containing 160 acr
> all in sec 22 town 115 R 18 west
> in the town of Nininger
> County of Dakota State of Min
> I allso appoint  My wife Bridget Kelly
>         (his)
> .  .  "(Daniel  X  Kelly)   Executrix
>         mark
>            of this my last will
>            and testament"

■ It is quite apparent from the will itself that the words "also 300 dollars I have in Bank" are an interlineation and were placed therein after the words "My farm containing 160 acr" etc; and that the sentence appointing the wife as executrix was written after the testator's name was signed to the will. As first written then, the last two sentences read: "I also bequeath to my wife Bridget after my depts all are paid all that remains of my personal property My farm Containing 160 acr all in sec 22 town 115 R 18 west in the town of Nininger County of Dakota State of Min." This, standing alone, would constitute a gift of the farm to the wife. If the words "also 300 dollars I have in Bank" were transposed so as to come after the next sentence, the meaning would be clear.

The very first sentence of the will grants to the wife "the care of my farm." It may be reasonably inferred therefrom that the testator's primary thought and object was to provide for his wife. Such would be the natural inclination of a man in testator's circumstances. Then comes the sentence: "If she Remain single untill my son John Kelly is 27 years of age then he to get 80 acres also my son Frank 80 acrs when he is 27 yrs of age if he lives with his Mother." Are these 80 acres in each case to be taken out of the home farm? If absolute gifts, they are inconsistent with the grant of the unqualified care of the farm to the wife, and wholly incon-

sistent with any later gift of the fee to her. The next sentence, stating his desire that out of the proceeds of the farm his wife shall pay to each of the other children $200 at her own discretion, rather adds to the uncertainty. It does not seem reasonable that testator would expect the wife to pay out $1,200 from the proceeds of a farm given to the sons and in which she had but a limited interest for a few years' time. Farm lands were not of great value at the time the will was made. The appraised value of this farm was $2,400. The wife was left with eight children to care for, the oldest being a daughter then 15 years of age. The personal estate was insignificant in amount. It does not seem reasonable that testator intended to leave the wife with only a half interest in the farm when John became 27 years of age, or to leave her, and any of the children remaining with her, homeless when Frank reached the age of 27 years.

The primary rule of construction is that the intent of the testator, as expressed in the language of the will, is to be gathered from everything contained within the four corners of the will, read in the light of the surrounding circumstances. In re Estate of Anderson, 148 Minn. 44, 180 N. W. 1019; 6 Dunnell, Minn. Dig. (2 ed.) § 10257, and cases cited; 28 R. C. L. p. 270, § 244.

There are sufficient indications in the will itself to cast doubt upon any intention of the testator to grant title to the farm to the two boys. The will is ambiguous, and resort may be and was had to evidence showing the situation and circumstances of the testator and his family at the time it was made. This seems specially appropriate where, as here, the testator died within a day after making the will.

Where the trial court makes its findings and conclusions, based on extrinsic facts in addition to the will, there is apparently no reason why its findings and conclusions should not have the same weight as in any other case. In re Paulson's Will, 127 Wis. 612, 107 N. W. 484, 5 L.R.A.(N.S.) 804, 7 Ann. Cas. 652. We are called upon here to review such findings and conclusions. Such findings are not to be set aside if reasonably sustained by a consideration

of all the evidence. This rule applies to inferences and conclusions from undisputed facts, as well as to findings on conflicting evidence. Such inferences and conclusions are treated as findings of fact and not to be disturbed unless contrary to the inferences a reasonable mind might properly draw from the evidence. N. W. F. & M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 483, 117 N. W. 825; G. N. Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N. W. 135. Under these rules we cannot say that the evidence is insufficient to sustain the findings and conclusions of the trial court.

■ Respondents urge practical construction as an additional ground for sustaining the trial court. Practical construction of a will by the parties interested therein has not been extensively treated in reports and texts. It is however well recognized and has been applied in several cases.

In Dorrance v. Dorrance (C. C. A.) 238 F. 524, the court held that the fact that certain provisions of a will had been accepted as valid for almost 25 years, while not controlling, called upon the court to be cautious in considering a different contention.

2 Schouler, Wills (6 ed.) § 841, states: "The practical interpretation placed on a will by all parties interested, for a long period of time will not be disturbed except for most imperative reasons."

In Guilford v. Gardner, 180 Iowa, 1210, 1223, 162 N. W. 261, the court said:

"If the construction of the devise were one open to any reasonable doubt, the fact that the son, the one person adversely affected by the condition attached thereto, survived the testator more than two years, and never in his lifetime, so far as the record shows, questioned the conditional character of his title, it is significant of the meaning and effect of the testator's language as it appeals to the ordinary mind."

In Runyon, Sr. v. Pond Creek Coal Co. 197 Ky. 757, 760, 248 S. W. 188, the court said:

"In addition, as we have seen, plaintiff himself, by his conduct in moving away in 1896 and making no claim to any character of

interest in the land in controversy for more than fifteen years construed the will as making the top of the ridge the dividing line."

Other cases are Coulter v. Crawfordsville Tr. Co. 45 Ind. App. 64, 88 N. E. 865; Jessup v. Witherbee R. E. & I. Co. 63 Misc. 649, 117 N. Y. S. 276; Bacon v. Sayre, 84 Misc. 462, 147 N. Y. S. 522.

John Kelly left the farm about 1903. He married and established a home elsewhere. He made no claim to any part of the farm until the question of distribution came up in the probate court in 1927. Frank left the farm about 1914, married and established a home elsewhere. He never claimed and does not now claim any ownership or title to any part of the farm. The mother has remained on the farm and exercised dominion over and claimed ownership thereof ever since testator's death. This long recognition of the mother's right to the farm, while not conclusive, might well be given consideration by the trial court in construing an ambiguous will.

The appellant contends that the first part of the will saying that each of the sons is to get 80 acres on arriving at 27 years of age must be construed as an absolute devise of 80 acres out of this farm to each of them, and that the last part of the will apparently granting this particular farm to the mother should be construed as a mere description of the farm already granted to the two sons. Possibly it might be so construed. The trial court did not so construe the will, and we find sufficient evidence to sustain the findings and conclusions of the trial court.

We find no error in the rulings of the court in admitting certain extrinsic evidence referred to in the second assignment of error.

Order affirmed.