ALLEN, Judge.
This is an appeal from the final decree in a suit for declaratory relief whereby plaintiff sought to have a will construed.
*788 Elizabeth L. Pancoast, a daughter-in-law of the testatrix,. Sarah N. Pancoast, sued Mary L. Pancoast, as successor-trustee of the Sarah N. Pancoast estate, and the two surviving sons of Sarah, averring that Sarah died in 1945, leaving a will conveying all her property to her husband, Harry M. Pancoast, in trust for their three sons; that about a year after the death of Sarah, her son B. K. Pancoast, the husband of plaintiff, died intestate, leaving the plaintiff, his widow, and two daughters as his heirs-at-law; that the daughters conveyed their respective interests in B. K.’s estate to the plaintiff; that notwithstanding the said trust was personal and a successor-trustee was not contemplated, the Court, upon petition of the two surviving sons and without notice to plaintiff, appointed the defendant, Mary L. Pancoast, the second wife of the named trustee, as successor-trustee.
The Complaint prayed that an accounting be made by the acting trustee and by the two surviving sons, of what they had received from the estate; that the plaintiff be declared to be the owner of a one-third undivided interest in the Sarah Pancoast estate; that the trust be decreed to have terminated; and that the trust corpus and accrued income be distributed.
Plaintiff’s two stepdaughters intervened, denying that the instruments executed by them to the plaintiff conveying their interests in the estate of B. K. Pancoast their father, had the effect of conveying any interest which might have come to their deceased father through his mother, Sarah.
Mary L. Pancoast, the successor-trustee, and the two surviving sons of Sarah answered, averring that the effect of the Will was to create cumulative life estates; that upon the death of B. K. Pancoast, his part passed to the two surviving sons; that when another dies the entire estate will pass to the survivor; and that the trust must continue until the death of the last, unless before that time the trustee sees fit to distribute the estate, in which event, and not until then, the trust will have served its purpose.
The chancellor handed down a Summary Decree in favor of defendants, which was reversed by this Court (Pancoast v. Pancoast, Fla.App.1957, 97 So.2d 875) upon the ground that testimony should have been taken so that the chancellor could determine from the evidence the intentions of the testatrix before construing the Will.
Testimony was taken, and the Court again found for defendants upon the ground that the Will created life estates in the three sons of the testatrix, and that when B. K. Pancoast died about a year after his mother, his interest passed to the two surviving brothers. The chancellor also held that the trust will continue until the last brother dies, unless before that time the successor-trustee distributes the whole of the estate as she has the power to do at any time, and that in the event the whole of the estate shall not be so distributed, the remainder will, upon the death of the last surviving son, be administered under the laws of descent and distribution as the Estate of Sarah N. Pancoast.
The involved Will was written June 3, 1938, and the testatrix died April 14, 1945. One of the three beneficiaries, B. K. Pan-coast, a son, died intestate August 29, 1946, leaving the plaintiff, his widow, and two daughters as his heirs-at-law. H. M. Pan-coast, the trustee, husband of the testatrix and father of the three sons, died survived by two sons September 1, 1954. Mary L. Pancoast, the present successor-trustee was appointed November 16, 1954.
This is the second time this case has come' before this court. On the first appeal, it was held that, the Will being ambiguous, it was necessary for the lower court to take testimony to develop all the facts and circumstances surrounding the execution of the Will so as better to determine the intent of the testatrix in using the language she employed in the Will. The case was reversed and remanded with directions to the lower court to determine, from all the testimony, the intention of the testatrix at the time of the execution of said Will. The. *789 opinion of this court, (see Pancoast v. Pancoast, Fla.App. 1957, 97 So.2d 875, 876) written by the late Robert J. Pleus, one of the original Judges of this court, whose untimely death cut short a life that showed great judicial promise, said:
“The language used by the testatrix in the Will involved and viewing the entire will immediately raises serious doubts and renders the intention of the testatrix obscure. There being such doubt and obscurity resort was made to the rules or canons of testamentary construction. By employing specific canons and ignoring others the will could be the subject of four or five different interpretations, each carrying its own result as to the disposition of the property and the rights of the parties to this cause. Which of these canons to adopt and whether any may be specifically applicable can therefore be determined only if the terms of the will be read in the light of all the circumstances surrounding the testatrix at the time of its execution. * * *
“The fundamental and controlling axiom is to ascertain and effectuate the intention of the testator as gathered from what was written in the will. Wallace v. Julier, 1941, 147 Fla. 420, 3 So.2d 711. In order to do this the court should as nearly as humanly possible try to put itself in the place of, or the armchair of, the testator. To accomplish this it is proper to consider all circumstances surrounding the execution of the will, the condition, nature, and extent of the property devised, the testator’s relationship and attitudes toward the members of his family and to the beneficiaries of the will, their financial condition and in general the relationship between all the parties concerned, including, as in this case, the trustee. 57 Am.Jur., Wills, Section 1144. Florida courts have consistently followed this practice. Roberts v. Mosely, 1930, 100 Fla. 267, 129 So. 835; Marshall v. Hewett, 1945, 156 Fla. 645, 24 So.2d 1; Iles v. Iles, 1947, 158 Fla. 493, 29 So.2d 21.”
Testimony was taken before the lower court in accordance with this Court’s direction, and a decision was rendered similar to the former decision rendered by the chancellor.
The final decree, which distinctly sets out the facts involved, states:
“This case turns on the interpretation of Item III of the Will of Sarah N. Pan-coast, deceased. As directed by the Appellate Court, this Court has tried to place itself in the arm chair of the testatrix to arrive at her intent, as gathered from what is written in the Will and considering the circumstances surrounding its execution and the relationship of the parties involved.
“Sarah N. Pancoast died and was at that time survived by her husband, Harry M. Pancoast and three sons, all being sui juris, and none being under any disability, B. K. Pancoast, R. H. C. Pancoast and Harry M. Pancoast, Jr.; that the said Sarah N. Pancoast died leaving a Will which was admitted to probate in the County Judge’s Court of Hillsborough County, Florida, on May 3, 1945, with Letters Testamentary being issued to her husband, the said Harry M. Pancoast, the executor named in said Will, on May 3, 1945; that on August 29, 1946, one son, B. K. Pancoast, died intestate, leaving a widow and two daughters of his by a prior marriage, Juanita Pancoast and Mrs. Florence Wilkins. The plaintiff in this suit is the widow of B. K. Pancoast, while the said two daughters are the intervening defendants. On or about September 1, 1954, the said Harry M. Pancoast died leaving surviving him a second wife, Mrs. Mary L. Pancoast, and his sons, the said R. H. C. Pancoast and Harry M. Pancoast, Jr.; that subsequent to the death of the said Harry M. Pancoast, on petition of the said R. H. C. Pancoast, and to which proceeding the other son, Harry M. Pancoast, Jr., was made a party, the Circuit Court of Plillsborough County, *790 Florida, appointed the said Mary L. Pan-coast as Successor Trustee under the Will of Sarah N. Pancoast, deceased, to Harry M. Pancoast, deceased, on November 16, 1954, which proceedings were in full compliance with the then existing laws of the State of Florida. The defendants in this suit are the said Mary L. Pancoast, as Successor Trustee, and the two living sons' of Sarah N. Pancoast, R. H. C. Pancoast and Harry M. Pancoast, Jr.
“Item III of said Will provides:
“ ‘All the rest and residue of my estate, real, personal, and mixed, wheresoever situate, which I may die seized and possessed, I do hereby give and grant to my husband, Harry M. Pancoast; to hold such remainder, however, in trust for the use and benefit of my three sons:
B. K. Pancoast, Seffner, Florida
R. H. C. Pancoast, Los Angeles, California
Harry M. Pancoast, Jr., Riverside, California
or to such of my sons as shall survive me, or in the event of the death of one or more of my said sons, his, or their, share to go to my son or sons, then living; and I do hereby direct my said Trustee to pay to my. said sons, either from the income or principal of my estate, such sum or sums as he shall deem necessary for their needs,, from time to time, or would be convenient to my said estate, said disbursements to be made solely in the discretion of my said Trustee, share and share alike.’
“From the evidence before the Court it is clear that the Pancoasts were a close family, the mother and father rendering financial assistance to the three sons as the need arose, even after the sons became of age and married and that the sons themselves helped each other out; that the mother (the testatrix) desired the better things in life for her sons, that she wanted to take care of and provide for her sons,her concern was for her boys alone. It seems clear that providing for her three sons, and the survivor of them, was the primary concern of the testatrix in writing the Item of the Will here involved.
“It has been suggested that the Item may have been intended to place title in' the husband, but the record shows that because of boom time judgments against the husband he did not want title in himself and it would have been repugnant to any intent of the testatrix for the fee title to be in her husband, he was simply appointed as trustee so that the boys could be taken care of during their lifetimes; the boys (the beneficiaries) were all of age, sui juris, under no disabilities, but from time to time in need of financial assistance. The primary concern, as aforesaid, was in providing for the needs of the sons and the survivor of them.
“Considering the evidence before the Court and the language used in the Will, it is the Court’s opinion that Item III of the Will sets up a valid trust for the sons surviving at the death of the testatrix and then grants each surviving son a life estate in corpus retaining in the estate the rever-sionary interest for distribution under the laws of descent and distribution for intestacy. The testatrix, after her sons and the survivors of them had been provided for, was not concerned with disposition of the estate, so that, as the trust provides, when the said B. K. Pancoast died, his life estate was extinguished, his share in the trust went to the surviving sons and the entire trust continues for the life of the said R. H. C. Pancoast and Harry M. Pancoast, Jr., and for the life of the survivor of them; upon the death of the survivor of them, the reversion vested in the estate of Sarah N. Pancoast is then distributable under the laws of descent and distribution for intestacy. Under the termination of said trust in such manner, the Trustee, who it is shown was a close friend of the family, has the power at her discretion to distribute the entire corpus or income, or any part thereof, to the present life beneficiaries, R. H. C. Pancoast and *791 Harry M. Pancoast, Jr. or to the survivor of them as provided in the Will and neither the plaintiff widow nor the intervening children of B. K. Pancoast have any vested or present interest, right, or title therein and no right to request the termination of the trust. The plaintiff is not entitled to an accounting or appraisal and it is not necessary to determine at this time the issue between the plaintiff, Elizabeth L. Pancoast, and the intervenors, Juanita Pan-coast and Mrs. Florence Wilkins, as to the validity of the assignments of the distributive share of Burleigh K. Pancoast, deceased, executed by the intervenors to the plaintiff.
“If any doubt existed in the Court’s mind, it is completely erased when we find that the estate of B. K. Pancoast never claimed nor inventoried any interest in this trust after his death and that the plaintiff testified that the husband of the testatrix, who was the first trustee, and whose lips have now been sealed by death, advised plaintiff some years before that neither B. K.’s estate, nor his heirs, had any interest in the trust, the equities being with defendants.”
We approach the instant case under different circumstances from those under which an appellate court ordinarily passes upon a lower court’s construction of a Will. It will be noted that in the former hearing before this court, we held that the involved Will was ambiguous and remanded' the cause to the lower court for the taking of evidence to determine, from the Will itself and from such evidence, what the intent of the testatrix was when she executed said Will. Evidence was taken before the lower court, and he determined, as a question of fact, that the intent of the testatrix was to leave her property in trust for the benefit of only her sons, and the survivors or survivor thereof. If the lower court had sufficient substantial, competent evidence before him to determine this fact, then this court must give the lower court the weight ordinarily given to the findings of the trier of facts upon review by an appellate court. It is well settled in Florida the findings of fact by a probate judge which are based upon substantial, competent evidence will be given the same weight, on appeal, as the findings of any other trier of fact.
In the case of In re Williams’ Estate, Fla.1952, 59 So.2d 13, 17, it was stated:
“It is well established in this class of litigation, that it is our duty to examine the evidence and all Exhibits and determine if there is substantial competent testimony to support the findings of the Probate Court and that it did not misinterpret the legal effect of the testimony, as a whole. If, as a result of the examination, it is found that there is no substantial competent evidence to support the findings of the Probate Court and that the Court misconstrued the evidence taken as a whole, then the findings of the Probate Court must be reversed, otherwise affirmed.”
In the case of In re Kelly’s Estate, 1929, 177 Minn. 311, 225 N.W. 156, 157, 67 A.L.R. 1268, which involved the interpretation of a Will, the Minnesota Supreme Court, in its opinion, said:
“Where the trial court makes its findings and conclusions, based on extrinsic facts in addition to the Will, there is apparently no reason why its findings and conclusions should not have the same weight as in any other case. In re Paulson’s Will, 127 Wis. 612, 107 N.W. 484, 5 L.R.A.,N.S., 804, 7 Ann.Cas. 652. We are called upon here to review such findings and conclusions. Such findings are not to be set aside if reasonably sustained by a consideration of all the evidence. This rule applies to inferences and conclusions from undisputed facts, as well as to findings on conflicting evidence. Such inferences and conclusions are treated as findings of fact and not to be disturbed unless contrary to the inferences a reasonable mind might *792 properly draw from the evidence. Northwestern Fire & Marine Ins. Co. v. Connecticut Fire Ins. Co., 105 Minn. 483, 117 N.W. 825; Great Northern R. Co. v. City of Minneapolis, 142 Minn. 308, 172 N.W. 135. Under these rules we cannot say that the evidence is insufficient to sustain the findings and conclusions of the trial court.”
It will also he observed in the case of In re Kelly’s Estate, supra, that the Court made the following observation which is persuasive though not determinative in the present case:
“Respondents urge practical construction as an additional ground for sustaining the trial court. Practical construction of a will by the parties interested therein has not been extensively treated in reports and texts. It is, however, well recognized and has been applied in several cases.
“In Dorrance v. Dorrance [3 Cir.]; 238 F. 524, the court held that the fact that certain provisions of a will had been accepted as valid for almost 25 years, while not controlling, called upon the court to be cautious in considering a different contention.
“2 Schouler on Wills (6th Ed.) § 841, states: ‘The practical interpretation placed on a will by all parties interested for a long period of time, will not be disturbed, except for most imperative reasons.’
“In Guilford v. Gardner, 180 Iowa 1210, 162 N.W. 261, the court said: 'If the construction of the devise were one open to any reasonable doubt, the fact that the son, the one person adversely affected by the condition attached thereto, survived the testator more than two years, and never in his lifetime, so far as the record shows, questioned the conditional character of his title, it is significant of the meaning and effect of the testator’s language as it appeals to the ordinary mind.’ ”
The evidence in the present case shows that the plaintiff below failed, for a period of several years before the bringing of this suit, to question the conclusions of her now deceased father-in-law that she and her husband’s daughters had no interest in this particular property.
It is the contention of the appellant and the intervenors that upon the death of Sarah N. Pancoast, the testatrix, the legal title to the residue of her estate passed under Item III of her Will to her husband, Harry M. Pancoast, as trustee, and the equitable title passed in equal shares to her three sons, all of whom survived her; that upon the death of her son, B. K. Páncoast, subsequent to the death of the testatrix, his one-third interest passed to his widow, the appellant herein, and his two daughters, the intervenors, in equal shares; that the powers conferred upon the original trustee were such as should be exercised only by him; that, hence, the trust was legally terminated at his death and the property ought then to have been distributed; and that since this was not done, it should now be distributed and an accounting made as prayed in the complaint.
The appellant cites cases from many jurisdictions in support of her contentions, including the annotation from 51 A.L.R. 2d appearing on page 205, et seq.
Were this court sitting in place of the lower court as trier of facts, the cases cited by the appellant would have been very persuasive, but we approach this case with the view above stated, that having previously determined that the Will involved herein was ambiguous and having remanded the same to the lower court to determine, from the evidence, the intention of the testatrix, we are bound by his conclusions of fact based upon the evidence which was heard by him if sufficient competent evidence existed upon which to base his conclusions. We have studied the record, including the testimony before the lower court, and conclude therefrom that *793 the construction of the lower court was reasonable under the evidence adduced.
In Hiller v. Loring, 1927, 126 Me. 78, 136 A. 350, 351, a bequest of the residuary-property to the brother, Frank W. Loring, and the grandniece, Ethel Leigh Hilton, followed by the provision that “should Frank W. Loring decease, his share to revert to Ethel Leigh Hilton,” was held to intend only a life estate in Frank, in view of the facts that at the time the Will was written the testarix knew she was on her death bed, while her brother, by contrast, was in middle life and, in so far as appeared, in normal health and vigor, and the grandniece Ethel was a young child, apparently motherless, who had been in the special care of the testatrix and during the latter’s last illness had' been daily at her bedside. The court was of the opinion that it was not reasonable to suppose, in view of the circumstances, that the testatrix intended to provide for the possibility of her brother’s death before her own. The court took notice of the Connecticut rule that if the language of a Will is of doubtful meaning the words are to be read in the light of the circumstances and conditions under which it was written. See also In re Thompson’s Estate, 1946, 161 Kan. 641, 171 P.2d 294; Brown v. Lippincott, 1892, 49 N.J.Eq. 44, 23 A. 497.
The appellant also raises certain questions touching upon admission of certain evidence under her point VI which we do not pass on, as we think there was other sufficient competent evidence to sustain the lower court.
There also appears in this case the contention of the intervenors, who were the daughters of the deceased B. K. Pancoast, that the instrument purporting to convey their title and interest to their step-mother, the plaintiff below, did not convey their interest in any property that might come to their deceased father from the Sarah N. Pancoast estate. The lower court did not pass on this question on the grounds that since he held that neither the appellant nor the intervenors had any interest in the Sarah N. Pancoast estate, it was not necessary to decide the controversy among them as to which had the interest, if any, in the estate. Since we shall affirm the lower court, there is no necessity for this court to pass on this question.
It is the conclusion of this court that the lower court should be affirmed.
Affirmed.
KANNER, C. J., and FARRINGTON, OTIS, Associate Judge, concur.