# PHILIP F. WALSH AND ANOTHER v. VALENTINE KUECHENMEISTER AND OTHERS.[1]

February 21, 1936.

No. 30,718.

[1]Reported in 265 N. W. 340.

*George Beaverson,* for appellants.

*D. T. Collins* and *Will A. Blanchard,* for respondents.

JULIUS J. OLSON, JUSTICE.

The appeal is from a judgment.

Plaintiffs, husband and wife, on and prior to June 24, 1922, were the owners of certain premises in Anoka county. They borrowed $1,700 from St. Anthony Falls Bank and to secure payment thereof executed a mortgage upon said premises. The note was payable in monthly instalments of $20, but whatever sum remained unpaid five years after its date was then to be due and payable. On November 1, 1923, they entered into a contract with defendants Kuechenmeister under the terms of which the latter were to pay $3,800 for the property, $100 of which was paid at the time of its making. The remaining sum was to be paid by "assuming and paying off a mortgage now on said premises which amounts at this date to $1,500.68, including interest," at the rate of $35 on the 24th of each month, beginning November 24, 1923. These monthly· payments were to continue after the mortgage had been retired and applied upon the remaining $2,200 of the purchase price, commencing "one month after the said mortgage is fully paid up." The contract interest rate was fixed at seven per centum but, as to the $2,200 above the mortgage, was to be allowed to accrue while the mortgage was being paid. The purchasers were also to pay all taxes. After the making of the contract the purchasers paid the bank from time to time such sums of money that on August 30, 1926, the mortgage had been reduced to $897.55, but they were in arrears respecting their payments in the amount of $362.60. Plaintiffs had served notice of cancellation, and the time within which to comply with the claimed default was rapidly drawing to a close. Defendant Ryder came into the picture at that time, his reason and purpose being to help the Kuechenmeisters, as he is the father of defendant Eleanor. At that time he obtained an assignment of the mortgage,

tendered to plaintiffs the full amount of the balance of the purchase price, and demanded a deed to himself with abstract showing good and marketable title to the premises. Plaintiffs were unable to comply as one Frissell had commenced an action to compel conveyance of the premises to him and in connection therewith had filed a notice of *lis pendens*. Ryder informed plaintiffs that no further payments would be made upon the contract until the *lis pendens* was discharged. The parties orally arranged that the matter was to be left in abeyance for a period of 30 days, within which time it was thought the title could be straightened out. The cancellation of the contract was dismissed and the Kuechenmeisters left in possession. The matter ran along something over five years, when the Frissell case was dismissed and a discharge of the *lis pendens* filed October 30, 1931. Shortly thereafter plaintiffs claim they made demand "upon the vendees named in said contract for the payment of the balance of said purchase price," at which time they were informed that Ryder claimed to hold the mortgage to secure the amount that remained unpaid at the time he acquired it and interest since accruing thereon. He also laid claim to taxes paid by him as the assignee of the mortgage. Plaintiffs thereupon brought suit praying "that they be adjudged the owners in fee of the above described premises, free and clear of any right, claim or interest therein by or on behalf of the defendants, or either of them, and for such other relief as to the court" might seem proper.

The defendants Kuechenmeister in their separate answer admitted plaintiffs' ownership of the property when the contract was made and the execution and delivery of the contract. They also admitted that the mortgage had been reduced to $897.55 in August, 1926, and alleged that the bank sold and assigned the mortgage to defendant Ryder, who thereby became owner thereof; that the amount due thereon at the time of answer, with accumulated interest, was $1,210.95. They further averred that defendant Ryder had since then paid taxes upon the property amounting to $1,210.20. All other allegations of the complaint were denied. Defendant Ryder in his separate answer pleaded virtually the same facts. Plaintiffs replied denying all new matter.

Upon these issues the case was heard by the trial judge, who thereafter made findings that plaintiffs were the owners of the real estate "subject to the mortgage now owned and held by the defendant W. J. Ryder and the foreclosure proceedings above mentioned." (Defendant Ryder had proceeded with foreclosure by advertisement of his mortgage shortly prior to the commencement of the suit.) That trial went for naught, however, as the court later, on plaintiffs' motion, granted a new trial.

When the case was tried the second time the issues were the same except that defendant Ryder filed an amended supplemental answer wherein he realleged all that he had set forth in his original answer and further pleaded the findings of the court at the former trial; that as a result of that trial and immediately thereafter plaintiffs "demanded possession of said premises from the defendants Kuechenmeisters, who were then in possession thereof" under the contract, and "thereupon the said defendants surrendered and delivered possession of said premises to the plaintiffs" on their demand and on plaintiffs' representations that they were then entitled to the possession of said premises "pursuant to said findings." He further averred that on March 10, 1933, he became the absolute owner of the premises by virtue of the foreclosure of his mortgage. By reason of these facts he claims that plaintiffs are estopped from proceeding further with this cause. Plaintiffs replied denying the new matter pleaded in the supplemental answer except the result of the former trial and that defendants Kuechenmeister have surrendered possession to plaintiffs.

These pleadings as amended furnish the issues upon which the cause was again tried. Plaintiffs sought and obtained the submission of certain special issues to the jury for answer. The issues so submitted and the jury's answers thereto are as follows:

"1. Did the defendant W. J. Ryder on August 30, 1926, represent to plaintiffs that the amount then due and unpaid on the mortgage against said property had been paid by Ryder? Answer: No.

"2. Did the defendant W. J. Ryder at that time represent to plaintiffs that so far as plaintiffs were concerned the mortgage should be regarded as paid? Answer: Yes.

"3. Did the plaintiffs because of the representations of the defendant Ryder (if you find that Ryder represented that the mortgage had been paid as far as plaintiffs were concerned) sign a release of the notice of cancellation previously served upon the defendants Valentine Kuechenmeister and Eleanor Kuechenmeister? Answer: Yes.

"4. Did plaintiffs in reliance upon representations made by defendant W. J. Ryder (if you find that Ryder represented that the mortgage had been paid as far as plaintiffs were concerned) withhold making demands on the defendants Valentine Kuechenmeister and Eleanor Kuechenmeister for further payments under the contract? Answer: Yes.

"5. Did the defendants conspire together after the time said tender was made for the purpose of defrauding plaintiffs out of the payments to be paid and made under the terms of the contract in this that said defendants agreed between themselves that the defendants Kuechenmeisters should remain in possession of said premises and make no payments whatsoever upon said mortgage, and pay no taxes thereon as required by the contract, well knowing at the time that the plaintiffs believed said mortgage obligation to have been paid? Answer: No."

Thereafter and on December 29, 1934, the court made findings of fact, conclusions of law, and order for judgment. The court therein recited that the "action came on for trial at the courthouse in the city of Anoka, county and state aforesaid, on March 26, 27, and 28, 1934. Special interrogatories were submitted to and answered by a jury. August 12, 1934, further evidence was offered and taken under the amended supplemental answer and the reply thereto." In substance the findings are these: Plaintiffs were the owners of the property involved on and prior to June 24, 1922, at which time they executed the mortgage to which reference has hereinbefore been made. On November 1, 1923, they entered into a contract for the sale thereof to defendants Kuechenmeister, who immediately entered into possession and so remained until May 27, 1932, when plaintiffs took possession and have been in such possession ever since. On August 30, 1926, Ryder "purchased said mort-

gage and the note secured thereby from the said St. Anthony Falls Bank and paid therefor the sum of $897.55; and thereupon said bank executed to the said W. J. Ryder its assignment of said mortgage and duly indorsed said note to the said Ryder. That thereby the defendant W. J. Ryder became the owner and holder of said note and mortgage, and ever since has been and now is the owner and holder of said note and mortgage"; that the mortgage was not paid or discharged; that default having been made in the payment of the note and mortgage, Ryder in January, 1932, inaugurated proceedings to foreclose, "and such proceedings were thereafter had that said mortgage was duly foreclosed and said premises were under such proceedings duly sold to the defendant W. J. Ryder on March 10, 1932; and the defendant W. J. Ryder is now the owner of said real estate under the sheriff's certificate of sale." The sale price at foreclosure was found to be $2,756.17, which covered "principal, interest, taxes, assessments, and expenses of foreclosure. That at the time of foreclosure the said property was reasonably worth about $3,000."

The court also found that defendants Kuechenmeister had defaulted under the terms of their contract and that their interest thereunder was at an end, due and proper notice of cancellation thereof having been served. The court adopted the findings of the jury to the effect that there had been no conspiracy on the part of defendants to cheat or defraud plaintiffs. But the court also found that Ryder had represented to the plaintiffs on August 30, 1926, that "so far as plaintiffs were concerned the mortgage should be regarded as paid." Relying upon this representation, plaintiffs released a cancellation notice previously served upon the purchasers. That because thereof plaintiffs "withheld making demands on the defendants, the Kuechenmeisters, for further payments under the contract, all to the loss and damage of these plaintiffs in the sum of $600." As conclusions of law the court found defendant Ryder to be the owner of the real estate and entitled to its immediate possession; that plaintiffs have judgment against Ryder in the sum of $600, but that no costs or disbursements were to be taxed for or against either party.

Plaintiffs moved for amended findings. This being denied, they served notice of taxation of costs and sought to tax the cost of the transcript of the evidence and other items of disbursements at the former trial. The clerk refused so to tax costs or disbursements, being of opinion that the court had ordered otherwise. Upon appeal from the clerk's taxation, the court sustained the clerk's acts in that regard.

Plaintiffs' complaint when reduced to what is really charged therein as wrongs upon which reliance is placed for recovery amounts to: (1) That defendant Ryder *paid* the bank mortgage and that as such it should be satisfied of record; (2) that Ryder represented to plaintiffs he had paid the mortgage and that plaintiffs never would be called upon to meet its requirements; that such statement was fraudulently made by him; that in reliance thereon plaintiffs permitted the Kuechenmeisters to remain in possession and refrained from collecting the monthly payments in the belief that these were being collected and applied upon the mortgage by Ryder; also, that "because of the refusal of said defendants to make any further payments until said *lis pendens* had been discharged, plaintiffs made no further demands upon said defendants for the payment of said purchase price * * *, intending to obtain a final adjudication of said lawsuit [the Frissell case] before making such demand."

The answer of the jury to the first special interrogatory and the findings of the court do away with the first claim. Nor can there be any question about the result being right. When Mr. Ryder purchased the mortgage from the bank he took the papers which included the mortgage, the note and the assignment, with him to the law office where the parties and their counsel were negotiating for an adjustment. Mr. Ryder himself testified that he purchased the mortgage and that his object in doing so was to protect himself against loss. The testimony of Mr. Walsh, who was present at the conference, falls far short of establishing any fraudulent conduct or representation on Ryder's part. The remaining portion of the complaint, that "because of the refusal of said defendants to make any further payments until said *lis pendens* had

been discharged, plaintiffs made no further demands" for payment, "intending to obtain a final adjudication" of the Frissell case "before making such further demand," cannot be construed as an actionable wrong on defendants' part. At most, this allegation only amounts to plaintiffs' reasons for not going forward with their claims, if such they had, against the purchasing defendants. Plaintiffs had no contractual rights or claims against Ryder. Their only contract was with the Kuechenmeisters. There is not as much as the scratch of a pen upon which to proceed against Ryder *ex contractu*. The triers of fact have determined the issue adversely to plaintiffs' contentions upon adequate evidence, so that ends the matter.

■ In respect of fraud and collusion alleged to have been practiced: The jury's answer to the fifth special interrogatory and the court's findings also negate that claim. What has been said under paragraph one hereinbefore also determines the adequacy of the evidence to sustain this finding.

■ We come now to special interrogatories two, three, and four. It will be noted that in each this expression is used, "so far as plaintiffs were concerned." Obviously what the trial court was trying to ascertain was whether Ryder had stated that plaintiffs would not be called upon personally to meet the obligation represented by the bank note and mortgage. The settled case does not contain the charge of the court, and of course the printed record contains nothing in respect thereto. It then becomes our duty to view the record and the answers to the special interrogatories in the light of the theory upon which the case was tried. The most that can be claimed for plaintiffs is that Ryder told Walsh when he purchased the mortgage that he had thereby relieved the plaintiffs from the obligations of meeting the monthly payments irrespective of what might happen on the part of the Kuechenmeisters. Mr. Ryder as a businessman and having the benefit of counsel's assistance would not be foolish enough to release his mortgage or to say it was paid in view of the fact that there was a *lis pendens* filed against the property and an action pending involving its title at the time these negotiations were had. If, as Mr. Walsh claims,

he was given to understand that he was not to be charged with the obligations incident to his note and the monthly payments thereunder required, the special purpose embodied in the respective interrogatories seems clear. If this were not so, the special issues submitted to the jury and answered by them (and later adopted by the court) would be contradictory. It is our duty to harmonize these so as to make possible a solution of the difficulty; not to confuse or make for naught what was accomplished in the court below. "Where, in an action triable to the court, issues of fact are submitted to a jury, such issues will be considered here, upon review, in the light treated by the court and jury at the trial, without arbitrarily applying technical legal rules of interpretation. * * * Where, by the course of the trial in such a case, counsel concur with the court upon the meaning of issues and questions submitted, so as to impress the jury with that view, they will be bound thereby, although the expression of such meaning may not be legally accurate." McAlpine v. Resch, 82 Minn. 523, 85 N. W. 545; 1 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 407.

■ Another assignment of error (No. 11) urged by plaintiffs is this: "The court erred in finding 'that by reason of the representations of the defendant Ryder the plaintiffs suffered damage in the sum of $600.00' and said finding is not sustained by the evidence." Assignment No. 2 is to the same effect.

Defendants concede that there is no evidence in the record justifying this finding of the trial court. We have carefully read the record and have come to the same conclusion as counsel. Obviously what the court was trying to do was to award plaintiffs something in the way of recompense for the use of the property while the Kuechenmeisters were there. There is nothing in the record to justify any substantial recovery. But this error is one of which plaintiffs cannot complain. It is error, not to their prejudice, but obviously to their advantage. As defendants have not appealed, we are powerless to grant them any relief. Under these circumstances, we cannot reverse because so to do would be to give one not appealing a right of review obviously not his. The findings, although erroneous, must stand, as we have neither authority nor do we

desire to interfere where the matter is not before us. "An appellant cannot complain that a judgment or order was more favorable to him than the case warranted. An appellant must be an 'aggrieved party,' and he cannot complain of errors that operated to his own advantage, or did not operate to his disadvantage." 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 418, and cases cited under notes 65, 66, 67, and 68; Miller Motor Co. v. Jaax, 193 Minn. 85, 86, 257 N. W. 653.

■ Only one other item remains to be considered. Plaintiffs claim it was error for the court below to deny them costs and disbursements. As we have already said, plaintiffs were not entitled to judgment in any substantial amount. At most, they were only entitled to nominal damages. They sought an absolute cancellation of the mortgage and to have it eliminated from the record and title adjudged in themselves. They did not prevail. The court found Ryder to be the owner of the mortgage under his assignment and that he became the owner of the fee by virtue of the foreclosure thereof. It would thus seem beyond serious dispute that he was in fact the prevailing party and as such should have been awarded costs and disbursements. But here, too, we have the same difficulty. Neither he nor either of the other defendants has appealed; hence the judgment below must stand.

It is true that under 2 Mason Minn. St. 1927, § 9473, the costs and disbursements taxable thereunder go to the party ultimately prevailing in the action. But, after all, "no general rule can be laid down as to who is the prevailing party." 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2206. Thus in Culligan v. Cosmopolitan Co. 126 Minn. 218, 148 N. W. 273, it was held that the court properly allowed costs to plaintiff although defendant had answered claiming absolute title and was allowed a lien for his tax certificate. There, as here, there was decision by the court of the respective rights of the parties, neither gaining all he had asked.

The judgment is affirmed.