IN RE TRUST UNDER WILL OF ELORA H. HOLDEN.
PAUL BRAUN HOLDEN v. FIRST NATIONAL BANK &
TRUST COMPANY OF MINNEAPOLIS AND OTHERS.[1]

February 23, 1940.

No. 32,132.

[1]Reported in 291 N. W. 104.

*Reed, Derrick & Kunz* and *Wettrick, Flood & O'Brien,* for appellant.

*A. R. Chesnut* and *E. T. Chesnut,* for respondent Lucille Coates Hammerel.

*Bowen, Best, Flanagan & Rogers,* for respondent Sadie B. Coates.

PETERSON, JUSTICE.

Appellant appeals from an order denying his claim, as the adopted son of the adopted son of the testatrix, to take as "lawful issue" of her adopted son under her will.

Testatrix had been a widow for many years prior to her death. A daughter, her only child, predeceased her husband. She adopted as her son her gardener and chauffeur, Paul Martin Truszinski, who took her name and thereafter was known as Paul Martin Holden. She made her will November 30, 1925, and died September 2, 1926.

She had three sisters and a large number of nieces, nephews, and other relatives. By the will she provided for the perpetual care of the graves of her deceased husband and daughter, gave her wearing apparel and jewelry to her sisters, and her city home in St. Cloud, her lake home in Stearns county, and certain personal property to her adopted son, Paul Martin.

She had an interest in some land in which there was iron ore and which was subject to a mining lease yielding large royalties

as rent, which she devised in trust. The trustee was directed during the lifetime of Paul Martin to pay to him her share of the net yearly minimum royalty payments and to pay to him, her niece Lucille Coates Hammerel, and Sadie B. Coates, the wife of her nephew, the net excess royalty payments share and share alike. In the event either Mrs. Hammerel or Mrs. Coates predeceased Paul Martin, her share of the income was to go to her "lawful issue" by right of representation.

The trust was to terminate at Paul Martin's death, at which time the trust estate was to be distributed under the following provisions:

"Upon the decease of my said adopted son, My Trustee shall transfer, assign and convey free and discharged of said Trust all my right, title and interest in and to the principal of this trust estate as to one-third (1/3) thereof to the lawful issue of my said adopted son, taking by right of representation, as to another one-third (1/3) thereof to the said Sadie B. Coates or her lawful issue taking by right of representation, and as to the remaining one-third (1/3) thereof to my said niece, Lucille Coates Hammerel, or her lawful issue taking by right of representation. In the event of my said adopted son leaving no lawful issue him surviving, then one-half (1/2) of the principal of this trust estate shall go and be transferred free and discharged of said Trust to the said Sadie B. Coates or her lawful issue taking by right of representation, and the other one-half (1/2) thereof to my said niece, Lucille Coates Hammerel, or her lawful issue taking by right of representation."

On December 7, 1937, 11 years after testatrix' death, Paul Martin Holden and his wife adopted as their son the appellant, Paul Braun, in the state of Washington. The adoption decree rendered pursuant to the statutes of Washington adjudged and decreed that appellant "shall be the son" of his adoptive parents, that he "shall be treated in all respects as their own lawful child, including the right of inheritance," and that his name shall be Paul Braun Holden.

Paul Martin Holden died on April 24, 1938. In proceedings for accounting and distribution appellant claimed the one-third share of the remainder which was given to the "lawful issue" of Paul Martin.

The court made elaborate findings of fact. In addition to those which we have stated above, the court found that testatrix referred to Paul Martin in her will as her adopted son 12 times, that the term "lawful issue" was used in the will five or six times, that all parties were designated by their precise relationship to her, and that there was a discriminating use of terms. There was an express finding that testatrix meant by the term "lawful issue" children begotten of the body and not adopted children. This finding, the court states in a memorandum made part of the findings, was reached as a conclusion from the other facts specifically found by applying to them the rules that the word "issue" is one of limitation and not of purchase, and hence in its primary meaning refers to heirs of the body, and that a testator is presumed not to include adopted children by a provision in the will for another's lawful issue, especially where the adoption takes place after the testator's death. The court concluded from this finding that appellant was not "lawful issue" and was not entitled to take under the will.

Here, appellant asserts the claims which he made below. Respondents controvert them and raise numerous procedural questions, of which we discuss only those which merit consideration.

1. Respondents urge that an appeal does not lie from that part of the order which denies appellant the right to take as issue under the will on the ground that an appeal does not lie from a part of an order. The order was made in proceedings had under L. 1933, c. 259, § 3, 3 Mason Minn. St. 1938 Supp. § 8100-13, which provides that an appeal may be taken from such order within 30 days. An appeal lies from a part of a judgment or order which involves a distinct and separable question. Hall v. McCormick, 31 Minn. 280, 17 N. W. 620; Salo v. D. & I. R. R. Co. 124 Minn. 361, 145 N. W. 114; St. Paul Trust Co. v. Kittson,

84 Minn. 493, 87 N. W. 1012. Where, however, the question to be reviewed cannot be separated as in the case of items of a single claim, no such appeal will lie. Capehart v. Logan, 20 Minn. 395 (442); Stellmacher v. Bruder, 93 Minn. 98, 100 N. W. 473. The right of appellant to take under the will is a distinct and separate question, which may be considered and reviewed apart from other questions involved. The case of Rieke v. St. Albans Land Co. 179 Minn. 392, 229 N. W. 557, is not in point for the reason that the appeal there was from the part of an order granting judgment on a motion in the alternative for judgment notwithstanding the verdict or for a new trial under 2 Mason Minn. St. 1927, § 9495, which authorizes an appeal only from the "whole order." The statute involved here does not require that an appeal be taken from the whole order.

2. Appellant's right to take depends on whether or not he is "lawful issue" of his adoptive father within the meaning of that term as used in the will. The primary purpose of construction of a will is to ascertain the meaning and the intent of the testator. A testator's intention is to be ascertained from the language of his will, which may have a meaning controlled by surrounding circumstances or context. Thus words may be shown to have been used with a meaning different from their ordinary or technical one. Absent tokens of meaning other than such as the language itself imports, intention must be found exclusively in the language.

"Issue" is defined by 2 Mason Minn. St. 1927, § 10933(8), as meaning the lineal descendants of an ancestor. Apart from statute, "issue" means lineal descendants including those of every degree. In re Accounting of Farmers' L. and T. Co. 213 N. Y. 168, 107 N. E. 340, 2 A. L. R. 910; Annotations, 2 A. L. R. 930, and 117 A. L. R. 691.

Adoption gives an adopted child the status of issue in virtue of the provisions of 2 Mason Minn. St. 1927, § 8630, which provides:

"Upon adoption such child shall become the legal child of the persons adopting him, and they shall become his legal parents, with all the rights and duties between them of natural parents and legitimate child. By virtue of such adoption, he shall inherit from his adopting parents or their relatives the same as though he were the legitimate child of such parents, * * *"

The statute gives to an adopted child the status of a child of the body of the adoptive parent and extends the relation to the heirs and next of kin. The artificial relation is given the same effect as the natural one. The adopted child is a lineal descendant, In re Estate of Sutton, 161 Minn. 426, 201 N. W. 925; In re Cook, 187 N. Y. 253, 79 N. E. 991; an heir at law, Bakke v. Bakke, 175 Minn. 193, 220 N. W. 601; and next of kin of his adoptive parents, McKeown v. Argetsinger, 202 Minn. 595, 279 N. W. 402, 116 A. L. R. 398. Thus, the expression "issue" or "lawful issue" has a technical meaning under our statutes and decisions which comprehends an adopted child.

Technical words which have a definite and well understood meaning will be presumed to have been used in that sense in the absence of surrounding circumstances or context which show that a different meaning was intended. In In re Estate of Fretheim, 156 Minn. 366, 371, 194 N. W. 766, we held that the words "my legal heirs according as the law provides" in a testamentary disposition of property should be taken in their statutory meaning, absent context and surrounding circumstances controlling meaning, with the observation, "if testators will persist in using words of technical import, without explanatory context, their beneficiaries cannot complain if courts continue to give such words effect according to their long accepted legal definition." The question in that situation is not so much one of true intention as legal implications from the language. In New York L. Ins. & Trust Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431, 434, 31 A. L. R. 791, there was a gift over to "next of kin" in default of "issue." The question was whether the next of kin took *per stirpes* or *per capita* in the absence of any expression in the will

or surrounding circumstance controlling the meaning. Mr. Justice Cardozo said [237 N. Y. 109]:

"In all likelihood, he [the testator] simply failed to think the subject through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law. The question in such circumstances is one not of intention in the proper sense, but of the legal implications of one formula or another."

The words "next of kin" were held to import a reference to the statute of distribution in consequence of which the next of kin took *per stirpes*. In that case the court said that the words "next of kin" took their color and connotation from the statute, but that the word "issue" in the will did not. The New York statute does not define "issue"; ours does. The term "issue" derives color and connotation from our statute just as the words "next of kin" do from the statute of New York. In cases where the only intention disclosed is that which the language itself imports, the instrument stands "a mere expression of a will" which must be given effect according to the well understood meaning of the terms used. Bisson v. West Shore R. Co. 143 N. Y. 125, 128, 38 N. E. 104, 105.

Here the surrounding circumstances and context are neutral. Respondents urge that the context shows that the words "lawful issue" referred to children of the body of Mrs. Hammerel and Mrs. Coates, and that the same meaning should be given the words as applied to Paul Martin. But the words "lawful issue" were used generally. The meaning was not limited to the children living at the time the will was executed. Testatrix was making a gift to a class that was to come into existence in the future after her death. Any living children would have taken only as they qualified as members of the class. In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; note, 75 A. L. R. 773, 804. In view of the circumstances showing an intimate relationship of affection between testatrix and the children, it is improbable that she

would refer to them as "issue" any more than would their parents. In Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 A. S. R. 731, it was pointed out that it would be unnatural for a parent to refer to his children as issue and that in the majority of cases the word is used in its legal sense. The word denotes not only the children, but also their lineal descendants. Dixon v. Pendleton, 90 S. C. 8, 72 S. E. 501, 2 A. L. R. 915.

Appellant with equal assurance argues that the surrounding circumstances and context show that the word "issue" was used advisedly in its technical meaning and as including him. He finds support in surrounding circumstance from the fact that testatrix adopted Paul Martin and made provision for him as her "adopted son" with all which that implies. He urges that it may be inferred that, because testatrix had actual experience with adoption, she approved it not only for herself but for her adopted son as well. This may be true in fact, but there is nothing to show it. The conclusion is pure conjecture. In the context there are two circumstances which under some authorities give support to appellant's contention: (1) The strong evidence that the will was drawn by one expert and discriminating in the use of the technical terms employed, from which some courts infer as a fact an intention to use them in their technical legal sense, In re Estate of Corlies, 150 Misc. 596, 269 N. Y. S. 890, affirmed, 242 App. Div. 703, 273 N. Y. S. 412 (see In re Estate of Chase, 182 Minn. 271, 234 N. W. 294); and (2) the gift to issue with gift over in default of such issue, which some courts construe as indicating that the word was used in a primary sense, since the gift over was not to take effect so long as there were issue to take, thus letting in all lineal descendants. In re Van Cleef, 92 Misc. 689, 157 N. Y. S. 549; note, 2 A. L. R. 954; Theobald, Wills (8 ed.) 353.

We do not deem it necessary to find a testamentary intention other than that which is to be found exclusively in the language itself. The words "lawful issue" should be given their technical meaning for lack of another one apparent. We are cautioned by

judges like Mr. Justice Holmes in Eaton v. Brown, 193 U. S. 411, 24 S. Ct. 487, 48 L. ed. 730, and Lord Halsbury in Inderwick v. Tatchell [1903] A. C. 120, that courts should be reluctant to wander from the language and by indulgence of the imagination supply what the testator would have said if the contingency had occurred to him.

In the case of In re Trust Estate of Thompson, 202 Minn. 648, 279 N. W. 574, we held that where there was a gift to issue, the statutory definition of "issue" did not control as to whether issue took *per stirpes* or *per capita,* and that resort might be had. to the statutes of descent and distribution in determining the question. While the statutes refer to cases of intestacy, it was held that they might be considered in determining the proper construction of the will. This is in accord with the views above. See 2 A. L. R. 930, and 117 A. L. R. 691.

The words "lawful issue" refer to a class and include all who secure that legal status, whether by birth or adoption. Appellant, having secured the status of lawful issue in virtue of the adoption, answers the description determinative of membership in the class. He is entitled to take as "lawful issue" under the will not by right of inheritance, but as a legal consequence and incident of the relation of parent and child, which was created by the adoption. Hartwell v. Tefft, 19 R. I. 644, 35 A. 882, 34 L. R. A. 500; In re Olney, 27 R. I. 495, 63 A. 956; Sewall v. Roberts, 115 Mass. 262; St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685; Kales, "Rights of Adopted Children," 9 Ill. L. Rev. 149, 164.

Respondents' contention that Smith v. Bradford, 51 R. I. 289, 154 A. 272, 275, overrules Hartwell v. Tefft, *supra,* is without merit. In the Bradford case, unlike the Hartwell and instant cases, there was no gift in remainder to the issue of the life beneficiary; but an adopted child claimed as such issue. The court held that under the Hartwell case an adopted child takes only if that was the intention of the testator, but denied the right to take upon the ground that a gift by implication could not be sus-

tained. Speaking of the Hartwell case, the court said [51 R. I. 295]:

"In the circumstances, as said by the court in its opinion, as nothing appears in the will to limit the legal import of the word 'issue,' the word thus used included all descendants; that as the statute of adoption gives to an adopted child the status of a descendant, the adopted child was entitled to the fund."

Under the rules thus stated appellant is entitled to take.

Under our statutes it was error to hold that the words "lawful issue" were words of limitation and not of purchase, and that there is a presumption in the instant case that the testatrix did not intend to include an adopted child.

The word "issue" is one of purchase and not of limitation where there is a devise of a legal estate for life with gift over of the fee to the heirs of the life tenant in virtue of 2 Mason Minn. St. 1927, § 8058, abolishing the rule in Shelley's case, Whiting v. Whiting, 42 Minn. 548, 550, 44 N. W. 1030; see Dolbeare v. Dolbeare, 124 Conn. 286, 199 A. 555, 117 A. L. R. 687, and where the devise is in trust with remainder over to the heirs of the taker of the beneficial interest, as here, for the reason that the rule in Shelley's case does not apply where the life estate is an equitable and the remainder a legal estate. 24 R. C. L. p. 897, § 9, note 17; annotation, 29 L.R.A.(N.S.) 1031, note 46. By construing the words "lawful issue" as words of limitation, the court below concluded that the language referred to issue of the body. This was error.

The cases cited to sustain the proposition that there is a presumption that the testator does not intend that an adopted child shall take under the circumstances are either clearly distinguishable or are based upon reasons which we deem untenable.

There is context and surrounding circumstance showing a clear expressed meaning of the words in cases like Middletown Trust Co. v. Gaffey, 96 Conn. 61, 112 A. 689; Dulfon v. Keasbey, 111 N. J. Eq. 223, 162 A. 102; Albright v. Albright, 116 Ohio St. 668, 157 N. E. 760; and Puterbaugh's Estate, 261 Pa. 235, 104 A. 601, 5 A. L. R. 1277, which is absent here. In the cited cases the

finding was that the will disclosed a definite intention of the testator to prefer blood relations by confining his bounty to them and excluding all strangers to his blood. The gift of income to Paul Martin for life and remainder of the one-third in fee to his issue definitely shows that the testatrix was not influenced by considerations of blood in distributing this one-third, and that she definitely intended to divert it from her blood relatives to those not of her blood, except in the case of gift over for failure of Paul Martin's issue. Her gift to the nephew's wife shows in some degree also an intention not to dispose of the rest of her estate solely to blood relatives. Hence those cases are not in point.

But Dulfon v. Keasbey, 111 N. J. Eq. 223, 227, 162 A. 102, 104, holds that, in the absence of context or surrounding circumstance controlling the meaning, the court would adopt the definition of the statute, stating:

"Where the testamentary intention is indefinite or obscure an adopted child may take under it if his status answers the description of the will. The statutory system supplies the intention; he takes by designation of the system."

Difference in controlling statutes accounts for decision in particular situations, which would not be permissible here. We shall refer to some of them to distinguish some of the cases relied on.

The later Massachusetts cases involve a statute which provides that where the adopted child is not the testator's the intention that he should take must be clearly expressed in the will. Blodgett v. Stowell, 189 Mass. 142, 75 N. E. 138; Wyeth v. Stone, 144 Mass. 441, 11 N. E. 729. This statute was enacted to change the rule under the statute construed in Sewall v. Roberts, 115 Mass. 262, 276, which provided that:

"A child so adopted shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock; except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies

of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

The court held that under the broad language the adopted child became to all legal intents and purposes, with the exceptions mentioned, the child of the adopting parents, and said [115 Mass. 276]:

"The adopted child, in this case, therefore, in construing her father's settlement, must be regarded in the light of a child born in lawful wedlock, unless the property disposed of by the settlement falls within one of the exceptions. It is true that if she takes under the settlement, the property does not come to her by inheritance, but it comes to her as one of the legal consequences and incidents of the natural relation of parents and children."

Our statute is like the one construed in Sewall v. Roberts, 115 Mass. 262, and comes within the rule of that case. Since we do not have a statute like the amendatory act, the Blodgett [189 Mass. 142] and Wyeth [144 Mass. 441] cases are not applicable here.

Some cases involve statutes which withhold or deny to an adopted child the right to inherit from the lineal and collateral kindred of the adopting parent. Such statutes do not give the adopted child the status of a natural one and grant only certain rights of inheritance from the adopting parents. Russell v. Russell, 84 Ala. 48, 3 So. 900; Rodgers v. Miller, 43 Ohio App. 198, 182 N. E. 654.

The New York statute construed in In re Leask, 197 N. Y. 193, 90 N. E. 652, 27 L.R.A.(N.S.) 1158, 134 A. S. R. 866, 18 Ann. Cas. 516, provides that an adopted child shall not take so as to cut off one taking in remainder. The very fact of the enactment of such a statute shows its necessity to prevent the adopted child from taking under a statute giving him the status of a natural child. This is made clear by the opinion in In re Leask, *supra,* which cites Hartwell v. Tefft, 19 R. I. 644, 35 A. 882, and Sewall v. Roberts, 115 Mass. 262, approves the rule announced in those

cases, and indicates that the adopted child would have been permitted to take thereunder if it were not for the New York statute that the adopted child shall not take as against a remainderman. In the later case of In re Estate of Walter, 270 N. Y. 201, 200 N. E. 786, 788, involving the question whether an adopted child is a child entitled to take under a statute providing that a devise or bequest to a person who dies during the lifetime of the testator shall go to the child or children of the beneficiary, the court referring to In re Leask, 197 N. Y. 193, made this distinction clear and held that the adopted child took as a child, saying that the statute of adoption could not have made the right to take plainer. An adopted child is referred to as the adoptive parents' child "created by the legislature" having right of "survivorship under the adoption statutes." The court quoted from In re Cook, 187 N. Y. 253, 261:

"In the eye of the law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature."

Some cases involve statutes providing that the adopted child shall not be capable of taking property expressly limited to the body or bodies of the adopting parents. Jenkins v. Jenkins, 64 N. H. 407, 14 A. 557; 9 Ill. L. Rev. 149.

Still others involve wills drawn with reference to statutes which either did not recognize adoption or did not include adopted children as heirs or issue of the testator. Jenkins v. Jenkins, supra; Wallace v. Noland, 246 Ill. 535, 92 N. E. 956, 138 A. S. R. 247; Stout v. Cook, 77 N. J. Eq. 153, 75 A. 583. These cases apply the rule that a will takes its meaning from the statute in force at the time it was drawn where it appears that the testator had its provisions in mind and that a subsequent statute does not change such testamentary intention. See In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115.

Another class of cases simply follow one or more of the mentioned groups without considering whether or not the controlling

rule of law as well as the facts in the cited cases were applicable. In Woodcock's Appeal, 103 Me. 214, 68 A. 821, 125 A. S. R. 291, the court held that an adopted child was not included in a gift to testator's son and then over to his "child or children" under a statute giving the adopted child the status of one born in lawful wedlock to the adopting parents, where the child was adopted by the son after the execution of the will. The grounds of decision were that the testator did not intend to include the adopted child, for which proposition the court cited Russell v. Russell, 84 Ala. 48, and Schafer v. Eneu, 54 Pa. 304, both of which were decided under statutes which did not give the child adopted the full status of a child of the adoptive parents. In the Schafer case there was a further reason in that there was no adoption statute in force when the will was drawn, and vested rights had been created under the law as it stood before the adoption act was enacted. In the Russell case the court indicated that the adopted child would have been permitted to take under a statute similar to that considered in the Woodcock case, 103 Me. 214. It cites and approves Sewall v. Roberts, 115 Mass. 262.

Adoption statutes providing that an adopted child shall have the status of a natural one are intended to repeal and supersede statutes and rules of law under which the adopted child did not enjoy such status and the rights incident thereto. There simply can be no justification for measuring the rights of an adopted child under a statute conferring on it the status of a natural one by statutes or rules of law which withhold or deny such status. That is precisely what the Maine court did in the Woodcock case, 103 Me. 214, by determining the rights of an adopted child not by the rules compelled by its own statute but by the statutes of Pennsylvania and Alabama involved in the cases which it cited—rules which the Maine statute was intended to abolish. To apply a rule which has been changed by statute is to stifle the statute by the perpetuation of a discarded policy. Van Beeck v. Sabine Towing Co. 300 U. S. 342, 57 S. Ct. 452, 81 L. ed. 685. The Woodcock decision has been criticized as "the sort of thing

that makes for the despair of all who are interested in the application of legal principles in the construction of written instruments, especially deeds and wills," 9 Ill. L. Rev. at p. 169, and yet it has been cited in many subsequent cases without examination of the validity of the grounds on which it rests.

Others like Lichter v. Thiers, 139 Wis. 481, 121 N. W. 153, follow some of the foregoing cases without taking notice that the cases cited by them involved statutes different from their own. The Lichter case, although it involved a statute similar to the one involved in Sewall v. Roberts, 115 Mass. 262, cited Wyeth v. Stone, 144 Mass. 441, and Blodgett v. Stowell, 189 Mass. 142, as in point. "One could hardly think of a circumstance that could make the later Massachusetts cases of less value in aiding the Wisconsin court in its conclusion." 9 Ill. L. Rev. at p. 170.

The Michigan court in Russell v. Musson, 240 Mich. 631, 634, 216 N. W. 428, 429, follows the rule of presumption protestingly with the observation that the fact of adoption under Michigan statutes "is rather persuasive" that adopted children should take under such circumstances.

Some cases like Smith v. Thomas, 317 Ill. 150, 147 N. E. 788, and Casper v. Helvie, 83 Ind. App. 166, 146 N. E. 123, cite the Woodcock case, 103 Me. 214; Blodgett v. Stowell, 189 Mass. 142; Lichter v. Thiers, 139 Wis. 481, and similar cases, *supra,* indiscriminately.

In Mooney v. Tolles, 111 Conn. 1, 149 A. 515, 70 A. L. R. 608, the question arose under a statute substantially like ours. The word "issue" was held in one instance to include an adopted child of a beneficiary, for the reason given, that the testatrix knew of the adoption and approved it after she drew the will, and in another instance the adopted child was not included in a disposition of "ancestral property" under a power in testatrix' mother's will, for the reason that it was the intention to confine such property to blood relatives. It applied the presumption against the intention to include the adopted child as to the ancestral

property. The case follows Woodcock's Appeal, 103 Me. 214, and many of the other cases to which we have referred.

. The texts which lay down the presumption rule indicate that under statutes conferring the status of a natural child upon the adopted one the terms "issue" and "children" include an adopted child, citing Hartwell v. Tefft, 19 R. I. 644, and In re Olney, 27 R. I. 495; 70 A. L. R. 629; 69 C. J. p. 178, § 1201, note 45.

The courts which adhere to the presumption rule hold without exception that the adopted child is entitled to take as a child where the testator is the adoptive parent. 70 A. L. R. 631; 69 C. J. p. 177, § 1200. The distinction between the adopted child of the testator and that of another has been criticized. It has been said that "the reason for the distinction is not apparent." 1 Page, Wills, p. 1505, § 900.

It would seem that blood considerations would be stronger in the case of a testator's own child than remote relatives. The presumption rule does not apply at the very blood source where the reason for applying it is strongest. The rule as stated is not confined to blood relatives. Where the life beneficiary is not related to the testator by blood, as here, the reason for the rule is absent.

The least persuasive of all reasons given for the rule is that an adopted child should not be permitted to take because he was unknown to the testator. In many cases where provision is made for a class such as heirs or issue, the members of the class are unknown to the testator for the very simple reason that membership in the class is to be determined in the future and after his death. No one has ever supposed that one answering the description of those who are to take was to be excluded because he was unknown to the testator. See In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; Morrison v. Tyler, 266 Ill. 308, 107 N. E. 602.

A rule which is inapplicable where the reason given for it is strongest and the reason for which does not exist in some cases within its scope is unsound.

We believe that on principle the word "issue" in a testamentary provision should be construed to include adopted children in virtue of our statutes where a contrary intention is not shown. Whatever the holding, it results from the implications of the language of the will. What the implication shall be involves a choice between the definitions of the statutes and meaning founded on statutes and rules which have either been repealed or superseded. We believe that we should find the legal implications in present-day statutes just as courts in other days and at other places found a different implication in the rules which controlled their decisions. Otherwise the legislative purpose is defeated by maintaining in effect rules which it was intended to abolish.

3. The finding of intention not to include appellant within the term "issue" as a beneficiary under the will is urged as conclusive here under the rule of In re Estate of Kelly, 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268, that a finding of testamentary intention based on extrinsic facts in addition to the will is final on appeal. The rule rests upon the assumption that the evidence was considered according to applicable legal rules. Here erroneous rules were applied to the evidence and determined decision of the facts. In that situation the rule that findings made on conflicting evidence are final is not applicable. Findings of fact which are controlled or influenced by error of law are not final on appeal and will be set aside. Truelsch v. Miller, 186 Wis. 239, 202 N. W. 352, 38 A. L. R. 914; Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A. L. R. 5; 3 Am. Jur., Appeal and Error, § 904. See Wheeler v. McKeon, 137 Minn. 92, 162 N. W. 1070, 1 A. L. R. 1514. Consequently we must consider the evidence without the aid of the finding to determine whether it warrants the challenged conclusion. Boardman v. Lorentzen, 155 Wis. 566, 145 N. W. 750, 52 L.R.A.(N.S.) 476.

4. We are not prevented by the absence of a settled case or bill of exceptions from passing on the fact question whether or not appellant is "lawful issue" under the will. All the issuable facts were found with great particularity. The finding that ap-

pellant is not such issue so far as it rests on fact is a mere inference from, and controlled by, other facts specifically found. A general conclusion of fact from specific findings may be reviewed on appeal without a settled case or bill of exceptions to determine whether the conclusion is justified by the specific facts. Wheeler v. Gorman, 80 Minn. 462, 83 N. W. 442.

5. Respondents attack the validity of the decree of adoption for want of jurisdiction of the Washington court. Only parties who have appealed can assign error. Cross assignments by respondents, who have not taken a cross appeal, are not authorized and will not be considered. Walsh v. Kuechenmeister, 196 Minn. 483, 265 N. W. 340; Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981; 1 Dunnell, Minn. Dig. (2 ed. & 1937 Supp.) § 360.

The construction of the will, being dependent on the legal implications of its language, can be determined here without a retrial. Therefore the order should be reversed with directions to modify it so as to hold that appellant takes as the lawful issue of Paul Martin Holden.

Order reversed with directions.