**WYETH et al. v. MERCHANT et al.**

No. B–19510.

District Court, W. D. Missouri, St. Joseph Division.

Sept. 28, 1940.

Benjamin Phillip (of Culver, Phillip, Kaufmann & Smith), of St. Joseph, Mo., for plaintiffs.

Scudder, McCoun, Stockton & Kerfoot, of New York City, and Randolph & Randolph, of St. Joseph, Mo., for defendants.

OTIS, District Judge.

The will of William M. Wyeth created a trust estate for his granddaughter, Willameta Berenice Smith. After her infancy the annual income from the trust funds was to be paid to her. The will provided (the trust provision in the will is set out in full in the margin[1]): "In case my said

---

[1] "Sixth: I will and direct that Two Hundred Thousand Dollars ($200,000.00) of my personal estate be paid over to Morris A. Reed, James H. McCord and Edward Colhoun Smith, all of St. Joseph, Missouri, to be held by them and their successors in this trust, for the use and benefit of my granddaughter, Willameta Berenice Smith (sometimes called Willameta Berenice Wyeth), or in case of her death, for the other beneficiaries herein named, in the manner, for the purposes and on the express conditions and contingencies hereinafter specified.

"Said trustees shall loan to the Wyeth Hardware and Manufacturing Company of St. Joseph, Missouri, so much of the funds placed in their hands as said company may from time to time decide to borrow, at a reasonable rate of interest, so long as said trustees shall deem it safe to loan to said company. All of said funds not loaned to said company, shall be loaned by said trustees on good security, to be approved by them, at the highest legal rate of interest obtainable.

"It is my will and I direct that in case of the death, refusal to act, or other disability of any of said trustees, the vacancy thus caused shall be filled by appoint-

granddaughter shall die without issue surviving her then the whole of said trust fund remaining at the time of her death and all increase thereof shall be paid to my son Huston or his heirs and the trust hereby created shall terminate." The granddaughter died without child born of her body but leaving an adopted daughter. The chief legal question presented· is this: Is an adopted daughter "issue" within the meaning of the will? As this memorandum will indicate, the answer must be—No.

### Meaning of "Issue".

1. The question has been debated with great learning by all of counsel, as was to have been expected in view of the amount in controversy and of the ability of attorneys participating in the debate. The question, however (as it appears to me when I have studied the authorities cited), really is almost as one sided as a legal question can be. I have read all the cases cited· by counsel for defendants from every jurisdiction and, having read them, I can say with confidence that there is not a decision in the country which supports the thesis that an adopted daughter is within the meaning of the word "issue", as used in .the will here involved, considering the time when it was written.

In the margin[2] I indicate every case, with one exception, which counsel for defendants have cited, briefly discuss them and en-

ment of the remaining trustees; and the successors in trust so appointed shall have the same power; it being my desire that said board of trustees shall consist of three members, any two of whom shall have power to do all things relating to the execution of this trust. That unpleasant relations may not be created thereby, it is my will that no such appointment shall be made of any person as such trustee who is personally objectionable to my wife or my son Huston.

"Out of the income derived from said fund, the trustees shall pay to my wife for the use of my said granddaughter, or in ·case of the death of my said wife, then to the guardian of my said· granddaughter suitable amounts for her maintenance and education said amounts to be paid at least annually, and continue until my said granddaughter is of age; twenty-one years, but said amount shall not exceed in the aggregate the sum of Five Thousand Dollars ($5,000.00) per annum.

"All surplus income in excess of the amounts paid for the maintenance and education of my said granddaughter shall be loaned by said trustees in the same manner as the principal sum.

"After my said granddaughter attains the age of twenty-one years, all the net income derived from said trust funds, shall be thereafter annually paid to her at such times and in such amounts as she shall desire; and in case the trustees or a majority of them shall at any time consider the welfare of my said granddaughter shall demand the payment to her of any part of the principal trust fund, or that her interests would be best subserved thereby, then the trustees are hereby authorized from time to time to pay her, in addition to the net income, my son Huston and my· said wife, or the survivor of them concurring, so much of said trust fund as in their judgment shall be necessary, or most conducive to her well being.

"In case my said granddaughter shall die without issue surviving her then the whole of said trust fund remaining at the time of her death and all increase thereof shall be paid to my son Huston or his heirs and the trust hereby created shall terminate."

2 In support of their theory that the adopted daughter of Mrs. Merchant is included within the word "issue" used in the will, defendants' learned counsel have cited eighteen cases from Missouri and other jurisdictions. I have read each of these cases, and I point out in this footnote why each of them is entirely inapplicable to the problem presented here. I refer to them in the order in which counsel have cited them.

St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, 689, construed a will executed April 4, 1918, leaving a life estate in equal shares to the testator's children with remainder to their "heirs at law." The Supreme Court held that "heirs at law" included adopted children of the testator's child for that a Missouri statute enacted in 1917 and which "the testator is presumed to have known" made the adopted child "for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock." Mo. St.Ann. § 14079, p. 826. The case has no application, not only because it does not discuss the meaning of the word "issue", but also because the statute relied on was in force when the will was written.

Brock v. Dorman, 339 Mo. 611, 98 S. W.2d 672, 673, construed the word "heirs" as used in a will, the will in ques-

deavor to show that they have no relevancy to the question presented.

The case which I do not discuss in the margin I discuss here. It is the case to which counsel especially point as the best authority in the books for their position. The case is Holden v. First National Bank & Trust Company 207 Minn. 211, 291 N.W. 104, 107. That case, however, lends no support to the contention for which it is cited. There is indeed a superficial resemblance between that case and this. The case involved a will in which the testatrix left property in trust to an adopted son and at

---

tion devising land to the testator's son to hold during his life and "after his death to go to his heirs." The word "issue" was not discussed in the opinion. The court said that the word "heirs" as used in this will included an adopted child of the testator's son, whether the adoption act in force when the will was written or in force when the testator died was considered, the court pointing out expressly that if the testator had used the word "issue" or "heirs of the body of the life tenant" we would have had a different expression of intention.

In re Frost's Estate, 107 Misc. 118, 175 N.Y.S. 723, 724, decided by the Surrogate's Court of New York County, N. Y., construed a will giving a life estate to the testator's daughter, with remainder "to her heirs at law." The word "issue" is not discussed in the opinion. All that was held was that an adopted child of the daughter was an heir at law of the adopted parent by reason of the law applicable at the time of the adoption.

Buckley v. Frazier, 153 Mass. 525, 27 N.E. 768, 769, had to do with the right of a wife to the real estate left by her husband to the amount of $5,000 in value when the husband "leaves no issue living." It was held that "issue living" included an adopted child when the statute in force at the time of the husband's death placed the adopted child in the same position with reference to the adopting parent as if he were his natural child. If the Missouri statute governing adoption of children in force when the will in the case at bar was written had given the adopted child (as the Massachusetts statute did) the status of a child born in lawful wedlock the case cited would have some applicability.

Hartwell v. Tefft, 19 R.I. 644, 35 A. 882, 34 L.R.A. 500, was a case which involved the meaning of the word "issue" as used in a will. The will left a fund to trustees for children and grandchildren and "upon their death to pay their respective portions to their lawful issue," where the statute governing the adoption of children in force when the will was republished (by the addition of codicils) made the adopted child "the child of the parents by adoption, the same as if he had been born to them in lawful wedlock." Pub.Laws R.I.1866, c. 627. It was held that in a will so republished the word "issue" was presumed to have been used by the testator as including all descendants within the meaning of the law, including, therefore, adopted children.

In re Newman's Estate, 75 Cal. 213, 16 P. 887, 889, 7 Am.St.Rep. 146, construed the word "issue," as used in a statute of descents, as including an adopted child where, from the context of the statute, it appeared that the word "issue" was used as synonymous with "child" and where another statute declared that the relationship between an adopted child and the adopting parent should be the "legal relation of parent and child."

Young et al. v. Stearns, 234 Mass. 540, 125 N.E. 697, 8 A.L.R. 1010, does not construe the word "issue." The case involved a will giving an estate to the husband of the testatrix for life and to her "heirs at law" after his death. It was held that, by the statute of adoptions in Massachusetts in force when the testatrix died, the natural children of the adopted child of the testatrix (the adopted child having died before testatrix) were "heirs at law" of the testatrix.

Gilliam v. Guaranty Trust Company, 186 N.Y. 127, 78 N.E. 697, 698, 116 Am. St.Rep. 536, dealt with a trust in which land was conveyed to a trustee in trust for a beneficiary for life "and, after her decease to her heirs at law." There was no discussion in the case of the meaning of the word "issue." All that was held was that under New York law an adopted child was an "heir at law" of the adopting parent and that who were "heirs at law" of the adopting parent was to be determined as of the time of the adopting parent's death. The creator of the trust was held to have known when he created the trust that lines of inheritance were governed by statute and at any time could be changed.

Butterfield v. Sawyer, 187 Ill. 598, 58 N.E. 602, 52 L.R.A. 75, 79 Am.St.Rep. 246, construed a deed conveying a life estate to a daughter with remainder to her "heirs generally." The word "issue" was not discussed nor involved. The court held only that an adopted child of the daughter was within the designation

his death to his "lawful issue." The will was written November 30, 1925, and the testatrix died September 2, 1926. The adopted son of the testatrix, to whom the life estate was given, himself adopted a son long after the death of the testatrix. The date of the adoption was December 7, 1937. The statute governing adoptions in Minnesota which was in force when the will was made and when the testatrix died made the adopted child "the legal child of the persons adopting him, and they shall become his legal parents, with all the rights and duties between them of natural parents and legitimate child." Mason's Minn.St. 1927, § 8630. The Supreme Court of Minnesota said that this statute "gives to an adopted child the status of a child of the body of the adoptive parent." The court held that since the adopted child was, at the time the will was executed and when it spoke, by statute in all respects a natural child of the life tenant, he was included in the phrase "lawful issue," in the absence of anything in the will expressly excluding an adopted child. Quite obviously the case is not in point here where at the time the will was executed and when it spoke no

of "heirs generally" and that the matter was to be determined by the law as of the time when the daughter died.

Warren v. Prescott, 84 Me. 483, 24 A. 948, 17 L.R.A. 435, 30 Am.St.Rep. 370, construed a will wherein one Brick was a legatee. He died before the testator, leaving no issue of his body, but leaving an adopted daughter, Alice Brick. The descents statute of Maine gave to the "lineal descendants" of a legatee who dies before a testator a legal right to the legacy. The court held that under a statute in force when the will was written, which made an adopted child "to all intents and purposes, the child of his adopters," the adopted child was a "lineal descendant" within the meaning of the statute. Rev.St.Me.1883, c. 74, § 10. The opinion does not discuss the word "issue".

Wilder v. Butler, 116 Me. 389, 102 A. 110, 111, L.R.A.1918B, 119, does not discuss the word "issue." The opinion holds that under a trust deed providing that after the termination of a life estate the trust funds shall go to the "child or children" of the life tenant, an adopted son of the life tenant will not take as a "child" within the meaning of the deed, where the adoption was sixteen years after the execution of the deed. The court pointed out that the adoption statute in force when the deed was written did not make the adopted child the "child" of adopting parents for all purposes.

Batchelder v. Walworth, 85 Vt. 322, 82 A. 7, 37 L.R.A.,N.S., 849, Ann.Cas. 1914C, 1223, does not discuss the word "issue" as used in a will. The opinion construes a statute and holds that where the word "issue" is used in the statute as meaning "child" it includes an adopted child where another statute gives to an adopted child the same rights as a natural child.

In re Cupples' Estate, 272 Mo. 465, 199 S.W. 556, 557, did not involve the word "issue." It was held only in that case that within the meaning of the phrase "direct lineal descendant of the testator," as used in a collateral inheritance tax statute, the child of an adopted child of the testator is a "lineal descendant of the testator." The opinion was bottomed upon the context of the inheritance tax statute and upon the language of the adoption statute in force.

Bernero v. Goodwin, 267 Mo. 427, 184 S.W. 74, does not construe the word "issue." The opinion holds only that the natural child of an adopted child, the adopted child having predeceased the adopting parent, inherits from the adopting parent under the statute of descents as a "descendant" of a "child," where the statute authorizing adoption, as construed, makes the adopted individual the child of the adopting parent.

Williams v. Rollins, 271 Mo. 150, 195 S.W. 1009, does not construe the word "issue." It holds only, as was held in the last preceding case cited, that the natural child of an adopted child is a "descendant" of the adopting parent within the meaning of the statute of descents.

Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 8 L.R.A.,N.S., 117, 118 Am.St. Rep. 672, 9 Ann.Cas. 775, construes a will giving the remainder after a life estate to the "heirs" of the life tenant. The word "heirs" was held to include an adopted child where at the time of the death of the life tenant, the statute made the adopted child an heir of the adopting parent.

Shepherd v. Murphy, 332 Mo. 1176, 61 S.W.2d 746, does not construe the word "issue." The opinion has to do with the rights of a natural parent to inherit from an adopted child of an adopting parent and construes the adoption statute of Missouri enacted in 1917. The opinion has no bearing whatever upon the case at bar or the legal questions involved in it.

statute gave to an adopted child the character and rights of a natural child. The whole basis for the conclusion reached by the Supreme Court of Minnesota is absent in this case.[3]

 The Missouri statute concerning the rights of adopted children in effect at the time of the execution of the will and when the will spoke (Section 5248, R.S. Mo.1899) was—"From the time of filing the deed [i. e. the deed of adoption] with the recorder, the child or children adopted shall have the same right against the person or persons executing the same, for support and maintenance and for proper and humane treatment, as a child has, by law, against lawful parents; and such adopted child shall have, in all respects, and enjoy all such rights and privileges as against the persons executing the deed of adoption. This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption."

That this statute did not give to the adopted child the character of a child of the blood and that it did not purport to do anything of the kind is too clear to require discussion.

No decision of the Supreme Court of Missouri is directly in point. Such dicta, however, as appear in the opinions of Missouri courts support the contention of plaintiffs, that the word "issue," as used in the will here, includes only heirs of the body of the life tenant. Thus in Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672, it is strongly suggested that the word "issue," referring to issue of a life tenant, used in a will, is synonymous with "heirs of the body," as distinguished from "heirs" of the life tenant. Thus again in Melek v. Curators, 213 Mo.App. 572, 250 S.W. 614, it was held that a will giving an estate to a life tenant and the remainder to the child or children of the life tenant did not include an adopted child of the life tenant, when the statute governing adoptions in force when the will was executed did not give adopted children the character and rights of natural children as against others than their adopted parents.

 What is thus suggested by dicta in the cited and in other Missouri decisions is but the general law of the country as revealed by all decisions. The rule is stated thus in 33 C.J. 822—"In its strictest sense, the word 'issue', as referring to children, applies to those who are of the blood, and does not comprehend those who have acquired the name or character of children by marriage, or by adoption. But the rule will yield where there is a clear or manifest intention to the contrary expressed; and, accordingly, 'issue' may include adopted children."

Many cases from various jurisdictions are cited in support of the general rule set out.

In 1 Ruling Case Law, 622, the general rule is stated thus, with many cases cited—

---

[3] An admirable and scholarly discussion of the Rights of Adopted Children by Albert M. Kales appears in the Illinois Law Review for October 1914, p. 149ff. The thesis of Professor Kales is (p. 158 ff) that where the word "issue" is used in a will, unless the context makes it clear that it was or was not intended as meaning "heirs of the body" or as including adopted children, resort may be had to a statute enacted subsequently to the execution and effective date of the will, a statute establishing the character and status of an adopted child, to discover "what intention the law will charge him (the testator) with." And that is the thesis of counsel for the defendants here. The thesis depends for its applicability upon the assumption that the will itself does not show the testator's intent. If, however, when a will is written the word "issue" had a definite meaning in law, the use of the word does show the intent of the testator, unless the context indicates that the word is used with another than its usual legal meaning.

When the will here was written William Wyeth used the word "issue" in its then legal meaning of heirs of the body. Perhaps he did not contemplate that his granddaughter would adopt a child. If he had contemplated that event, perhaps he would have used some word including adopted children or otherwise would have provided clearly they were to be included. It is absurd to say, however, that he did not have an intention which disposes of the question and which he expressed. If "issue" includes only heirs of the body (and that was its meaning when the will was written) necessarily he intended to exclude an adopted child (or to exclude the state, if by some socialistic legislation the state should be declared to have all the rights and status of "issue" or "child" or "bodily heirs"). He intended to do that, whether or not he had an adopted child specially in contemplation.

"The right of an adopted child to succeed to an estate limited to the 'children,' 'issue,' or 'heirs of the body' of the adoptive parent, is, in some jurisdictions, expressly negatived by statute, and even if no statute so provides, it is generally held that an adopted child is not entitled, on the death of the adoptive parent, to take property limited to the 'children,' 'issue,' 'heirs of the body,' or 'right heir' of such parent, unless the intention that the child shall so take sufficiently appears."

In the old, but still most valuable American and English Encyclopedia of Law, at page 548 of Volume 17, it is said— "The word 'issue' in a will prima facie means the same thing as 'heirs of the body' * * *."

An examination of the encyclopedias and text books does not indicate that there is any case which holds that the word "issue", used in a will or other instrument creating a trust estate, which, after a life estate in one, is given to his "issue," includes an adopted child, unless there was in force at the time the will or other instrument was executed or became effective a statute which gave to the adopted child the character and rights of a child born of the body.

### Significance of Letter.

2. Defendants rely in part on a letter which was written by William Wyeth contemporaneously with the execution of the will to his granddaughter. It reads as follows:

"St. Joseph, Mo., Oct. 19th, 1900.
"Willameta Berenice Smith
"My dear Baby
"In the will just executed I have left the portion of my estate designed for you in charge of trustees, in order that it may be carefully and safely protected.
"In case of your marriage to a prudent and careful man who would advise and keep in your own name your property it will be proper for the trustees to turn the property over to you.
"It would distress me to think your money should be wasted or periled by a careless or speculative person.
"In case you do not marry, it will be best for you to make a will leaving the property to your uncle Huston or his children you and your grandmother have all the portions left you in money, Huston gets his principally in hardware stock and real estate: so

that you and your grandmother know exactly what you have and it is easily handled.
"This is simply business.
"I trust you will live long and enjoy your fortune.

"W. M. Wyeth."

The contention is that this letter indicated the real intent of Mr. Wyeth touching the trust he had established for his granddaughter, that he intended that the corpus of the trust should be paid over to her in the event she married a "prudent and careful man." Evidence was introduced to show that the last husband of the granddaughter, the defendant, Berkeley T. Merchant, was a careful and prudent man.

There are several reasons why it seems to me this contention cannot prevail. 1. There is no inconsistency between the language of the letter and the language of the will. The letter says only that in the event of marriage to a careful and prudent man "it will be proper for the trustees to turn the property over to you." There is no direction that the trustees should then turn the property over to the granddaughter. The will itself authorizes the trustees, whenever they think that "her interests" (i. e., the interests of the granddaughter) "would be best subserved thereby * * * to pay her * * * so much of said trust fund as in their judgment shall be necessary or most conducive to her well being." Certainly the trustees might have concluded that they should pay the trust fund to the granddaughter when she married a careful and prudent man. It was left to their discretion, and during the lifetime of the testator's son, Huston, and his wife, to the son's and wife's supervising judgment. 2. The letter was not referred to in the will. It was written after the will was executed. Under Missouri law the terms of the will cannot be modified by the letter. Wooley v. Hays, 285 Mo. 5′6, 226 S.W. 842, 16 A.L.R. 1.

### Effect of Contract.

3. It is contended by the plaintiffs in the case that, in any event, defendants are estopped by a certain contract signed by Berenice Wyeth Smith Merchant, in which it was clearly recognized by her that the trust was to terminate on her death and the property to go to the heirs of Huston Wyeth. This contention has great force, but I do not find it necessary to discuss it, since the plaintiffs are entitled to recover on more fundamental grounds.

## Findings of Fact.

I. William M. Wyeth of St. Joseph, Missouri, died March 8, 1901. His will was executed October 18, 1900. In the "Sixth" subdivision of that will he directed that $200,000 be paid to trustees for the use of his granddaughter, Willameta Berenice Smith, and that—"In case my said granddaughter shall die without issue surviving her then the whole of said trust fund remaining at the time of her death and all increase thereof shall be paid to my son Huston or his heirs and the trust hereby created shall terminate."

II. The granddaughter referred to in the will and Finding of Fact No. I died (being then Mrs. Berkeley T. Merchant) April 12, 1940. She died without a child or children born of her body surviving her. She left an adopted daughter, the defendant, Berenice Wyeth Bull.

III. Huston Wyeth, referred to in the will and in Finding of Fact No. I died in 1925. Plaintiffs were his only children and are his only heirs.

## Conclusion of Law.

The court declares the law to be that under the facts found plaintiffs are the owners of and in law and equity have the title to all the property held by the trustees referred to in the findings of fact on April 12, 1940, and its increase, if any, except such income, if any, as may have accrued on or before April 12, 1940.

## Exceptions Allowed.

Defendants are allowed exceptions to the conclusion of law herein stated and to the refusal of the court to make the findings of fact requested by the defendants and set out in a document filed contemporaneously with this memorandum, incorporated herein by reference, and to the refusal of the court to state the conclusions of law requested by the defendants in a document filed contemporaneously with this memorandum and incorporated herein by reference.

## Indicated Decree.

Counsel for plaintiffs will prepare a form of decree in accordance with the prayer of the petition and with the findings of fact and conclusion of law set out herein and will submit that form to the court within five days from the filing of this memorandum.